DECISION AND JUDGMENT ENTRY
The ruling of the Scioto County Court of Common Pleas, confirming the decision and entry of that court's magistrate on motions of the parties in this matter, seeking modification of child support, is properly before us for review. We reverse and remand.
 Statement of the Case
Appellant, Ronald C. Munyan, and appellee, Marietta Sue (Munyan) Wellman were married July 11, 1973, and divorced July 31, 1985. There were two children of the marriage, Carrie, born May 15, 1977, and Melissa, born February 9, 1981. A separation agreement incorporated into the divorce decree set support at $25 per week or $108.34 per month for the two children.
In 1988, appellant, while employed with CSX Railways [hereinafter the railroad], was injured on the job and was placed on disabled status on August 2, 1988. On April 8, 1991, appellee filed several motions with the trial court, including motions to reduce unpaid child support to judgment, to find the appellant in contempt, and to modify the existing child support orders.
The court, on October 2, 1991, entered judgment against the appellant for unpaid child support and modified the support order to $100 per month for the two children. However, the court reserved jurisdiction to "redetermine the proper amount of child support and any child support arrears due and owing, if any, based upon any back pay railroad claim Defendant [appellant] receives, if any."
On February 4, 1994, appellant requested modification of these 1991 orders. His motion indicated that one of the minor children no longer lived with the appellee. A referee for the Scioto County Court of Common Pleas heard the matter September 6, 1994, but deferred ruling on appellant's motion pending an accounting of appellant's settlement with the railroad and discovery of his current income and employment status. From the record, it appears that the railroad settled appellant's claim on December 14, 1993.
The referee issued his report November 16, 1995. From this report, we find that the total amount of appellant's settlement with the railroad was $236,534.51. Out of this total, the railroad deducted $66,534.51 for "wage continuation benefits" paid to the appellant during the pendency of that litigation. Another $41,130.96 was repaid to third parties for loans advanced to the appellant during litigation, while $35,869.04 was paid to appellant's counsel for fees and litigation expenses. The sum of $93,000 remained for distribution to the appellant from this settlement.
After extensive calculations, the referee concluded that $13,302.96 should be distributed to the appellee as additional child support for the period of April 8, 1991, through May 31, 1995. In response to appellant's February 4, 1994 motion, the referee concluded that after July 7, 1993, one child lived with appellee's mother. The referee stated the grandmother did not seek support of this child, but did not indicate in his report whether his calculations were for two children or one. The report did not indicate why the period of support ended on May 31, 1995.[1]
On November 27, 1995, appellee filed her objections to the referee's report and a motion requesting the court to issue conclusions of law. The appellant filed his objections to the referee's report on November 30, 1995. The court denied appellee's motion for conclusions of law and set the matter for further hearing on January 5, 1996. At that hearing, the court directed the parties to further brief their objections, and the parties filed their briefs on January 31, 1996. The trial court, on September 27, 1996, referred the matter back to the referee with instructions to review his calculations and findings of fact and to issue conclusions of law.
Reflecting the change in Civ.R. 53, it was a magistrate of the court, as opposed to a referee, who issued a "decision and entry" on February 14, 1997. This magistrate's decision sets forth several recalculations and corrections to the earlier report and concludes with the finding that $21,123.05 would be due appellee for child support for the period of April 8, 1991, through May 31, 1995. Again, both the appellant and appellee filed timely objections to the magistrate's decision. In addition, on May 22, 1997, appellee moved the court for further modification of the child support orders, referring, however, to the initial order for support entered July 31, 1985 (the date of the divorce). On February 4, 1999, the court overruled the objections filed by both the appellant and appellee and confirmed the magistrate's decision filed February 14, 1997.
The appellant raises a single assignment of error for our consideration:
 THE COURT ERRORED [sic] IN FINDING THAT MONIES RECEIVED FROM A POST DIVORCE PERSONAL INJURY SETTLEMENT SHOULD BE CONSIDERED INCOME FOR PURPOSES OF COMPUTING CHILD SUPPORT.
 Opinion I
Our standard of review in a case of this ilk is one of abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142,541 N.E.2d 1028; State ex rel. Scioto County CSEA v. Gardner (1996),113 Ohio App.3d 46, 52, 680 N.E.2d 221, 225. To find an abuse of discretion we must find the decision of the trial court is "unreasonable, arbitrary, or unconscionable," and not merely an error of judgment. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140, 1141.
The record reflects that there were several hearings in this matter, but the appellant has failed to provide this Court with the transcripts of a number of those hearings. Absent an adequate record, an appellate court normally must presume the regularity of the proceedings below and the validity of the judgment of the trial court. See Hartt v. Munobe (1993), 67 Ohio St.3d 3,615 N.E.2d 617; Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,400 N.E.2d 384.
However, a review of the record fails to disclose any child support worksheets prepared by the court below in support of its calculations of child support. The Supreme Court of Ohio has held that a child support worksheet, calculated in accordance with R.C. 3113.215, "must actually be completed and made a part of the trial court' record." Marker v. Grimm (1992), 65 Ohio St.3d 139,601 N.E.2d 496, paragraph one of the syllabus. Since the terms of R.C. 3113.215 are mandatory and must be followed literally in all material respects, the failure to include the worksheet constitutes reversible error. Tobens v. Brill (1993), 89 Ohio App.3d 298,624 N.E.2d 265; Ingalls v. Ingalls (1993), 88 Ohio App.3d 570,575, 624 N.E.2d 368, 371.
The trial court may adopt worksheets submitted by a party as its own, but both parties must sign and date those worksheets.McCoy v. McCoy (1995), 105 Ohio App.3d 651, 655, 664 N.E.2d 1012,1014-1015. We discovered several worksheets in the record, apparently submitted by the appellee in support of her objections to the first report submitted by the referee. These worksheets are neither signed nor dated by the parties and are not identified as to the year each one represents, nor does it appear that the magistrate or court reviewed or adopted any of these worksheets in preparing or calculating the child support orders. See Franke v. Franke (May 16, 1996), Highland App. No 95CA879, unreported.
The failure to include any worksheet could be found to be harmless error if it could be determined from the record how the trial court arrived at the gross income figures used to calculate a support order. Appellant argues that the trial court failed to calculate his gross income in accordance with R.C. 3113.215. Neither the referee's report of November 16, 1995, nor the "magistrate's decision" of February 14, 1997, provide us with guidance as to how the court calculated appellant's gross income. Without the applicable child support worksheet in this record, we cannot determine whether or not the calculation by the court of appellant's child support obligation was in error. Accordingly, we find the trial court erred when it determined appellant's child support obligation without using the mandatory basic child support schedule and applicable worksheet in R.C. 3113.215.DePalmo v. DePalmo (1997), 78 Ohio St.3d 535, 540,679 N.E.2d 266, 270-271 (when computing child support, a court "must apply Child Support Guidelines as required by the standards set out inMarker.")
Hence, we must remand this matter to the trial court for recalculation of child support for the years in question. Such recalculation shall include a worksheet for each year in question, prepared in accordance with R.C. 3113.215. Since the appellant does raise pertinent questions regarding the assumptions made by the trial court in determining his gross income, we will review these issues in an effort to provide further guidance to the trial court when making this determination and the related child support calculation.
 II
Appellant argues that the trial court improperly considered his lump sum settlement from the railroad in calculating his gross income, citing to R.C. 3113.215 (A)(11). Appellee argues that R.C. 3113.215 (A)(11) should not apply to this case because that division of the statute was not in effect when she filed her motion for modification on April 8, 1991. This division of the present statute states:
 "Nonrecurring or unsustainable income or cash flow item" means any income or cash flow item that the parent receives in any year or for any number of years not to exceed three years and that the parent does not expect to continue to receive on a regular basis. "Nonrecurring or unsustainable income or cash flow item" does not include a lottery prize award that is not paid in a lump sum or any other item of income or cash flow that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests or otherwise utilizes to produce income or cash flow for a period of more than three years.
From the record, we are not entirely sure which version of R.C.3113.215 the trial court applied in reaching its decision. Various forms of nonrecurring lump sum payments have been excluded from "gross income" for purposes of child support prior to the addition of this division to R.C. 3113.215. For example, $35,000 received from a retirement account that was "rolled over" to an IRA could not be considered "gross income" to the unemployed child support obligor. See Rapp v. Rapp (1993),89 Ohio App.3d 85, 89, 623 N.E.2d 624, 627. Nor was a "lump sum" distribution from a buyout of a Subchapter "S" corporation "gross income" in the year it was paid. See Ricketts v. Ricketts (June 8, 1992), Preble App. No. CA91-11-019, unreported.
However, we conclude that this portion of the statute has no application to the issues we must resolve in this case. Defining those issues raised, we must determine how the trial court calculated child support for the period of April 8, 1991, through May 31, 1995, since that is the period covered by the order appealed from by the appellant.
We first examine the referee's report of November 16, 1995. The referee found that the appellant had earned income as follows:
 1991 $ 2,065 1992 $ 4,956 1993 $ 4,851 1994 $ 6,684 1995 $11,575
In 1994, the referee found the appellant received an additional $2,424 in unemployment compensation. In computing estimated gross income for the years 1991 to 1995, the referee imputed income to the appellant at an annual rate of $4,650 after December 14, 1993. This figure represented a 5 percent annual rate of return on the $93,000 cash settlement the appellant received on that date.
The referee then found that the appellant received $66,534.51 from the railroad for the period of August 2, 1988, through December 14, 1993. These "wage continuation benefits" clearly were income to the appellant during this period of some sixty-four months. However, the referee concluded that the appellant actually had an income of $101,435.51 during this period, a difference of $34,901. The referee averaged this $101,435.51 over the period of August 2, 1988, to December 14, 1993, to conclude that the appellant had an additional $18,838 in annual income during 1991, 1992, and 1993. Therefore, the referee calculated the gross income of the appellant as follows:
 1991 $20,903 1992 $23,794 1993 $23,689 1994 $13,758 1995 $19,433
After the parties filed objections to this report, the magistrate reexamined the calculations of gross income and support. The magistrate's decision, released February 14, 1997, indicates that the loans received by the appellant, totaling $41,130.96, constituted income and, therefore, should be included in the calculation of support. The December 14, 1993 settlement included this sum as loans repaid directly to third party creditors of the appellant by the railroad. Apparently, the finding that the repayment of these loans from the railroad's settlement is intended to support the earlier calculation of the appellant's gross income for the years 1991, 1992, and 1993. The magistrate also increased the appellant's estimated income for 1994 to $25,522 from the previous 1994 estimate of $13,578, but the entry does not explain what this additional income represents or how it was calculated.
 III
We find that the magistrate correctly included the "wage continuation benefits," paid by the railroad to the appellant, in the calculation of gross income for the years 1991, 1992, and 1993. Clearly, the intent of these "wage continuation benefits" was to provide income to the appellant while he was recovering from his work-related injury. Therefore, we view these payments as payments to the appellant that are similar in nature to, and somewhat equivalent to, either workers' compensation payments or disability payments. Both the current version of R.C. 3113.215
(A)(2), and the version of this statute in effect prior to 1993, include both workers' compensation benefits and disability benefits as income for the purposes of calculating "gross income" under this statute. Therefore, the trial court correctly included these payments in calculating the gross income of the appellant for those years.
From the record, it appears that the appellant received the total of $66,534.51 paid in "wage continuation benefits" between August 2, 1988, and December 14, 1993, or a total of two hundred eighty weeks. A reasonable calculation of the weekly value of this benefit is $237.62 or $12,356 annually. If we add this annual total to the earned income for the years of 1991, 1992, and 1993, we arrive at a total gross income for the appellant as follows:
 1991 $14,421 1992 $17,312 1993 $17,207
The trial court added an additional $4,650 annually to appellant's income after 1994 based on a 5 percent rate of return from the $93,000 cash settlement received from the railroad. The definition of gross income at R.C. 3113.215 (A)(2) includes "potential cash flow from any source," and this definition has not changed since 1991. Although rates of return on certificates of deposit and similar instruments have been slightly below 5 percent in recent years, we find the trial court's estimate of the potential income from such a large sum to be entirely realistic. We find no abuse of discretion on the part of the trial court in including this potential interest income in the child support calculations. See Slowbe v. Slowbe (Dec. 7, 1995), Cuyahoga App. No. 68739, unreported (imputed income from lump sum social security award).
If we add $4,650 to the earned income totals for 1994 and 1995, and include the unemployment compensation received in 1994, we obtain the following total income for the appellant for the years in question:
 1994 $13,758 1995 $16,225
As can be seen by comparing the trial court's calculations of gross income for these years, there are significant differences in the totals for each year except 1994. However, the 1997 magistrate's decision increased the 1994 gross income to $25,522. The magistrate did not explain how he arrived at this total, nor are calculations included in the record to substantiate this gross income amount for 1994.
Our conclusion is that the difference results from the inclusion of the $41,130.96 in loans and interest repaid out of the settlement with the railroad, as averaged in some fashion over this five-year period. The appellee argues that the trial court did not err in adding additional amounts to the appellant's gross income out of the lump sum settlement from the railroad. In support of her argument she cites two unreported decisions: Pylesv. Hornsby (June 10, 1996), Clermont App. No. CA96-01-006, unreported, and Naser v. Naser (Oct. 13, 1987), Montgomery App. No. CA10341, unreported.
The Naser case is not on point. In Naser, the child support obligor received a settlement from an insurance company for a motorcycle accident. Instead of receiving this settlement in a lump sum, he received a monthly payment from the insurance company. Such periodic payments clearly fit within the definition of "gross income" then in use under the Supreme Court of Ohio's child support guidelines.
In Pyles, the trial court included an $18,000 insurance settlement in the obligor's income when calculating child support. That court apparently relied up the portion of R.C.3113.21 (D) that allows collection of child support out of such proceeds. R.C. 3113.21 does not define what is, or what is not, income for purposes of calculation of support. Instead, R.C.3113.21 (D) describes a variety of sources for the collection of support. We are not required to follow the conclusion arrived at in this unreported case, and we decline to do so.
A July 31, 1996 filing by the appellee contains a summary of the December 12, 1993 settlement distribution, resolving the appellant's claim against the railroad. Schedule B, attached to this summary, sets forth the distribution of the $41,130.96 to third-party creditors of the appellant.
Most of these funds, $33,685.67, repay a loan of $28,900 and $4,785.67 in interest due to "Arjaybe." The record does not otherwise identify this entity. The remaining $7,445.29 is listed as a series of loans from the Kentucky law firm of Pratt Callis and includes interest of $839.78. The record reflects that this firm represented the appellant in his action against the railroad, which was filed in Greenup County, Kentucky.
A loan is not "income" to the appellant. We are unable to determine when appellant received the "Arjaybe" loan or how the appellant used this money, since nothing appears in the record to assist or direct us in our inquiry. The loans from Pratt Callis date from various periods in 1991 and 1993. Once again, nothing in the record indicates how the appellant used these funds. While appellant had the benefit of the money during this time, at some point in the future he would have had to repay this money. Appellee cites no authority for including these repaid loans in the calculated gross income of the appellant for the years in question, and we have found nothing on point which persuades us that such inclusion is appropriate.
More typical is the situation illustrated by Sizemore v.Sizemore (Oct. 14, 1994), Montgomery App. No. 13673, unreported. There the obligor loaned his closely held company $100,000, arguing that the money should be not be considered as income in calculating his gross income because the loan did not produce any income. The trial court disagreed, imputing a 12 percent annual rate of return, based on commercial loan rates. R.C. 3113.215
(A)(2) clearly supported that assumption, for the imputed interest on the loaned money represented "potential cash flow" and, therefore, part of the gross income. We find no support for the converse proposition that loans to a child support obligor would constitute income, absent evidence in the record that the creditors did not intend to seek repayment of those loans. We find, therefore, that the trial court incorrectly included these loans as income to the appellant in calculating his gross income for the years in question.
 IV
The appellee filed her motion to modify the support order on April 8, 1991. Since then, the General Assembly has amended R.C.3113.215 several times, including a revision to the child support tables in 1993. In Capper v. Capper (Dec. 14, 1995), Lawrence App. No. 95CA8, unreported, this Court, through the auspices of a visiting panel from the Third Appellate District, found that the applicable statute for determining child support is the statute in effect at the time a complaint for divorce was filed. Judge Hadley citing his decision in Houts v. Houts (1995), 99 Ohio App.3d 701,651 N.E.2d 1031. See, also, Obermyer v. Obermyer
(Jan. 26, 1996), Wood App. No. WD-95-048, unreported. Hence, in recalculating the amount of support due for the period of April 8, 1991, through May 31, 1995, the trial court should use the appropriate support table of the version of R.C. 3113.215, in effect in 1991, the year appellee filed her initial motion for modification.
We sustain the appellant's sole assignment of error.
Accordingly, the judgment of the trial court is REVERSED and REMANDED for farther proceedings in accordance with this decision.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and remanded for a new hearing and that appellant recover of appellee costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
Kline, P.J.: Concurs in Judgment and Opinion as to Sections I and II. Concurs in Judgment Only as to Sections III and IV.
Abele, J.: Concurs in Judgment Only.
 _____________________ David T. Evans, Judge
[1] Presumably, Carrie, the oldest child, lived with her mother. Since Carrie was born May 15, 1977, she would have reached the age of 18 on May 15, 1995, and May 31, 1995, may reflect the date she graduated from high school and became emancipated, since she had attained majority on May 15, 1995.