OPINION *Page 2 
{¶ 1} Plaintiff-Appellant, Teresa Pendelton, n.k.a. Teresa Green, appeals the judgment of the Hancock County Court of Common Pleas granting Defendant-Appellee, Swanson Tyler Pendelton's (hereinafter referred to as "Tyler"), motion to modify child support. On appeal, Teresa argues that the trial court abused its discretion in estimating Tyler's income and that the trial court erred when it modified Tyler's child support obligation. Finding that Tyler failed to comply with the requirements of R.C. 3119.05(A), we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 {¶ 2} Teresa and Tyler were married in October 1991 and have two minor children, Cody, born April 13, 1992, and Candice, born April 9, 1993 (hereinafter Cody and Candice jointly referred to as "the children"). In April 1997, Teresa and Tyler were divorced, Teresa was named the residential parent and legal custodian of the children, and Tyler was required to pay child support in accordance with the Ohio Child Support Guidelines.
 {¶ 3} In February 2005, the trial court modified Tyler's child support obligation and required him to pay $1,036.95 per month.
 {¶ 4} In September 2005, Tyler moved to modify his child support obligation, because he was no longer employed by the University of Findlay, would no longer have health insurance, and anticipated that his annual income *Page 3 
would be substantially lower than the amount provided in the last child support computation worksheet.
 {¶ 5} In February 2006, Teresa filed a motion to find Tyler in contempt for failing to pay his child support obligation. On February 24, 2006, a hearing was held before a magistrate on Tyler's September 2005 motion to modify his child support obligation and Teresa's contempt motion. At this hearing, the following testimony was heard:
 {¶ 6} Tyler testified that the last time he was in court, he was employed full-time with the University of Findlay; that he currently is no longer employed there in that capacity; and, that his severance pay ended on September 30, 2005. Tyler continued that he is currently an independent contractor with the University of Findlay's Center for Terrorism Preparedness; that under his contract, he is paid $500 a day as a lead trainer, $350 a day as a co-trainer, and $30 an hour for course development; that when he became an independent contractor, he lost his health benefits; that he receives a $113 a day per diem for overnight commitments and $27 a day per diem when an overnight stay is not required; that he estimates his annual unreimbursed business expenses to be $11,262; that he pays $127.63 a month for health insurance for both he and the children; and, that he expects to be paid between $24,000 and $36,000 a year as a contractor with the University of Findlay. Tyler also noted that from October 2005 through the date of the hearing, *Page 4 
he had received between $15,000 and $18,000 in income; however, he indicated that $10,000 of his income was related to the aftermath of Hurricane Katrina, when he was sent to New Orleans, Louisiana, for two and a half weeks and that his employment through the University of Findlay was his only employment during 2005.
 {¶ 7} On cross-examination, Tyler admitted that he failed to bring his 2005 W-2 or 1099 tax forms or any other verification of what his income was in 2005, but that he believed he made approximately $52,000, of which $12,000 was on his 1099. Tyler also discussed that he had four or five jobs in November 2005, no jobs in December 2005, four or five jobs in January 2006, and six or seven jobs in February 2006; that the jobs were typically located outside of Findlay, Ohio; and, that the jobs typically lasted between one to three days.
 {¶ 8} Jeff McGuire, the Director of Operations for the Environmental Safety and Health Training Department at the University of Findlay, testified that Tyler was previously a full-time employee at the University and continues to work for the University as an adjunct instructor working for the training department; that Tyler would now be considered an independent contractor; that in a letter dated October 21, 2005, he estimated, based upon existing and projected workload, Tyler would receive between $36,000 and $48,000 in compensation per year, but that none of the University's independent contractors had any guaranteed *Page 5 
level work at any time; that Tyler's work with Hurricane Katrina as a subcontractor to the Federal Emergency Management Agency paid quite a bit more than his normal contracting work would pay; and, that the University issues Tyler a 1099 at the end of each year for tax purposes.
 {¶ 9} On cross-examination, Mr. McGuire testified that Tyler's contract with the University does not prevent him from contracting with other sources, but it has a non-competition clause, which would prevent Tyler from working for the University's existing clients; that Tyler is averaging five to eight days worth of work per month through the University; that Tyler, to his knowledge, has not turned down any jobs that the University has offered him; and, that Tyler earned $18,775 in wages and had been reimbursed $2,534 for expenses from the time he became an independent contractor to the date of the hearing.
 {¶ 10} On redirect examination, Mr. McGuire testified that Tyler gets scheduled for jobs typically two to four weeks in advance. On recross-examination, Mr. McGuire recognized that Hurricane Katrina caused Tyler's pay for his first three weeks as an independent contractor to be unusually high.
 {¶ 11} Teresa was called as if on cross-examination. Teresa testified that she is not employed outside of her home; that she currently stays at home and cares for her four children, including the two children of the parties; that March 2003 was the last time she was employed outside of her home, when she was a *Page 6 
recruiter for Hallmark Staffing Solutions and worked on one hundred percent commission; that she currently has no day care expenses; that she has made a conscious choice not to work outside of her home, because her youngest son requires speech and physical therapy and her husband travels extensively; and, that if she decided to work outside of her home, she did not believe she would have a problem finding a job.
 {¶ 12} On direct examination, Teresa testified that she receives no income separate from her husband and child support; that she has separate health insurance, in addition to Tyler's, which covers the children; that she and her husband pay approximately $1,000 a month in medical, dental, and vision coverage for them and the four children; that if she was to work full-time, she would not be able to provide proper speech therapy for her youngest son; that her husband is traveling approximately half of every month; that she last received a child support payment from Tyler on February 19th or 20th, 2006; and, that she wishes to claim the children for tax purposes.
 {¶ 13} On recross-examination, Teresa recognized that according to the Hancock County Child Support Enforcement Agency, at the end of 2005, Tyler had paid all of his child support obligations. *Page 7 
 {¶ 14} After Teresa testified, Teresa's counsel requested that Tyler submit a copy of his 2005 W-2 and 1099 from the University of Findlay, which were later included in the record as joint exhibits.
 {¶ 15} In March 2006, the Magistrate issued a decision, in which he determined that Tyler's income was going to substantially change in 2006, and modified Tyler's support obligation retroactive to January 1, 2006. In calculating support, the Magistrate determined that Tyler's adjusted gross income for self-employment was $34,238.88. To determine this figure, the Magistrate used $42,000 for Tyler's gross receipts from business and subtracted $5,730 for ordinary and necessary business expenses[1] and $2,031.12 in F.I.C.A taxes on line 2.c. After reducing Tyler's adjusted gross income from self-employment by $342.39 for his estimated local income taxes to be paid in 2006, the Magistrate concluded that Tyler's adjusted annual gross income for 2006 would be $33,896.49. Accordingly, the Magistrate determined that it should grant Tyler's motion to modify his child support obligation and lower his child support obligation from $1,036.95 per month, including processing fees, to $725.62 per month, including processing fees.[2] *Page 8 
 {¶ 16} In April 2006, Teresa filed objections to the Magistrate's decision. In her filing, Teresa argued that the decision relied on unverified, speculative evidence to determine Tyler's 2006 income; that the Magistrate used speculative business expenses to offset Tyler's projected 2006 income; that Tyler's income had not substantially changed at the time of the hearing; that the cost of health care for the children was not properly calculated; that the Magistrate erred in awarding tax dependency exemptions to Tyler; that the Magistrate erred in failing to find Tyler in contempt for failure to pay child support; and, that the Magistrate erred in assessing court costs to her.
 {¶ 17} In May 2006, Tyler filed a response to Teresa's objections, which included his own objections, and Teresa replied to Tyler's response and moved to strike Tyler's objections.
 {¶ 18} In June 2006, the trial court affirmed the Magistrate's decision in full and overruled Teresa's and Tyler's objections.
 {¶ 19} It is from this judgment Teresa appeals, presenting the following assignments of error for our review:
 Assignment of Error No. I The trial court's estimation of Defendant-Appellee's income was not based on competent and credible evidence and is therefore an abuse of discretion.
 Assignment of Error No. II *Page 9 The Defendant-Appellee had no change in income upon either the filing of his motion or the hearing date; therefore the trial court erred when it modified child support.
 Assignment of Error No. I {¶ 20} In her first assignment of error, Teresa argues that the trial court abused its discretion when it estimated Tyler's income on evidence which was not competent or credible. Specifically, Teresa asserts that Tyler's gross receipts from his business should have been $54,000 instead of $42,000, and that Tyler's ordinary and business expenses were not supported by competent or credible evidence. We agree in part and disagree in part.
 {¶ 21} A trial court has considerable discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. Pauly v.Pauly, 80 Ohio St.3d 386, 390, 1997-Ohio-105. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 22} For a parent who is employed to full capacity, "income" for the purpose of calculating child support is "gross income." R.C.3119.01(C)(5). "Gross income" is defined as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable[.]" R.C. *Page 10 3119.01(C)(7). "Gross income" also includes "self-generated income; and potential cash flow from any source." R.C. 3119.01(C)(7).
 {¶ 23} When determining the gross income of a self-employed parent, the trial court is to deduct ordinary and necessary expenses from the parent's gross receipts. Foster v. Foster, 150 Ohio App.3d 298, 303,2002-Ohio-6390. "Ordinary and necessary expenses" are "actual cash items expended by the parent or the parent's business." R.C. 3119.01(C)(9)(a). Additionally, when determining gross income, "[t]he parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents, including but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation * * *." R.C. 3119.05(A). "A party claiming a business expense has the burden of providing suitable documentation to establish the expense."Ockunzzi v. Ockunzzi, 8th Dist. No. 86785, 2006-Ohio-5741, at ¶ 53. "Moreover, `[f]ailure to obtain the necessary financial information renders the court's order arbitrary and therefore an abuse of discretion.'" Basham v. Basham, 3d Dist. No. 1-02-37, 2002-Ohio-4694, at ¶ 6, quoting Aiello v. Aiello (Sept. 11, 1996), 3d Dist. No. 13-96-12.[3] *Page 11 
 {¶ 24} Here, Teresa asserts that both the trial court's determination of Tyler's 2006 gross receipts and his ordinary and necessary expenses were not verified with proper documentation.
 {¶ 25} With regards to Tyler's 2006 gross receipts, Teresa contends that Tyler's gross receipts should have been calculated by forecasting Tyler's gross receipts based on his gross receipts from September 2005 through February 2006.[4] We disagree. Included in the record is a letter from Mr. McGuire from the University of Findlay, who forecasted Tyler's gross receipts to be between $36,000 and $48,000 a year. (Defendant's Ex. B). It appears that the trial court determined Tyler's 2006 gross receipts by using the midpoint of the range of Tyler's projected income provided in his employer's statement. Accordingly, we find that Tyler's 2006 gross receipts were properly verified and that the trial court did not abuse its discretion when it found that Tyler's 2006 gross receipts would be $42,000 for child support purposes.
 {¶ 26} With regards to Tyler's 2006 ordinary and necessary expenses, Teresa asserts that Tyler failed to provide the proper documentation to verify his business expenses in 2006. We agree. Included in the record is a document entitled "S. Tyler Pendleton Estimated Annual BusinessExpenses ", which lists *Page 12 
five estimated expenses. (Defendant's Ex. C) (emphasis in original). In this exhibit, Tyler provides that he estimates that in 2006, he will have $3,150 in unreimbursed mileage, $816 in office storage expenses ($68/month), and $1,200 in office supplies.[5] Additionally, Tyler testified that he had a cell phone, which he used 70% of the time for business purposes, that would add $564 ($47/month) in expenses in 2006. However, R.C. 3119.05(A) provides that Tyler's income needs to be "verified by electronic means or with suitable documents, including but not limited to, * * * receipts and expense vouchers related to self-generated income." While Tyler's exhibit estimated his ordinary and necessary business expenses for 2006, we cannot find any receipts or expense vouchers which would verify the amounts listed in Tyler's exhibit. We find that Tyler failed to provide suitable documentation to verify his 2006 ordinary and necessary business expenses and that the trial court erred in determining Tyler's gross income for child support purposes. To this extent only, Teresa's assignment of error is sustained and the judgment of the trial court is reversed and remanded for a recalculation of Tyler's gross income and child support obligations.
 Assignment of Error No. II *Page 13 {¶ 27} In her second assignment of error, Teresa argues that the trial court erred when it modified Tyler's support order, because Tyler had not experienced a change in his income upon either the filing of his motion for modification of support or at the hearing on the motion. Our disposition of Teresa's first assignment of error renders this assignment of error moot, and we decline to address it. App.R. 12(A)(1)(c).
 {¶ 28} Having found no error prejudicial to the appellant in the calculation of the appellee's gross receipts, but having found error prejudicial to the appellant in the calculation of the appellee's ordinary and necessary expenses, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.
Judgment Affirmed in Part and Reversed in Part and CauseRemanded.
 SHAW and PRESTON, JJ., concur. r
[1] Specifically, the magistrate determined that Tyler would have a $47 per month expense for the business portion of his cell phone; $3,150 in unreimbursed mileage (7,500 miles at 42 cents a mile); $816 for storage of records and supplies; and, $1,200 for supplies for 2006.
[2] Additionally, the magistrate determined that Tyler should retain the tax dependency exemptions for the children and that it should defer the issue of contempt for 90 days.
[3] As noted in the Basham decision, the cases cited in theAiello opinion were decided under former R.C. 3113.215. However, the language regarding the verification of earnings is essentially the same as under the new R.C. 3119.05. As such, we find these cases applicable to this issue.
[4] Specifically, Teresa would calculate Tyler's income based upon an exhibit which provides that from September 21, 2005 through February 15, 2006, Tyler had approximately $18,000 in gross receipts as an adjunct instructor. Additionally, Teresa properly notes that during this period, Tyler did not work in December 2005. Accordingly, Teresa would calculate Tyler's 2006 gross receipts by multiplying by three the gross receipts earned for the four months between September 2005 and February 2006. ($18,000 x 3 = $54,000).
[5] The exhibit also provides that Tyler expected to have $2,400 ($200/month) in car expenses and would require $3,696 to procure health insurance. *Page 1