OPINION *Page 2 
{¶ 1} Defendant-Appellant, Norman J. Smart, Jr., appeals the judgment of the Shelby County Court of Common Pleas, Domestic Relations Division, ordering him to pay Plaintiff-Appellee, Beverly K. Smart, monthly child support. On appeal, Norman asserts that the trial court erred by imputing an additional $32,500 annual income to him for purposes of child support calculations. Finding that the trial court did not abuse its discretion in calculating child support, we affirm the judgment of the trial court.
 {¶ 2} Norman and Beverly married in 1984 and had two daughters, Rachelle (DOB 12/28/1987) and Megan (DOB 10/31/1993). They divorced in 1998, and agreed upon a shared parenting plan whereby the children would spend 50 percent of their time with each parent. The parties agreed that neither would pay child support and that they would share expenses equally because they had substantially similar incomes.
 {¶ 3} Norman and Beverly filed two agreed judgment entries in 1999 and 2003, which provided additional clarification to the details of the shared parenting plan and modified the procedure for paying the children's expenses. According to the 2003 modification, Beverly would pay for all the children's expenses and then provide Norman with a list of the expenditures at the end of each month. Norman would then have two weeks to forward a check to Beverly for one-half of the *Page 3 
expenditures, and, if he disputed any of the expenditures, he was to send a notice to Beverly detailing his objections along with payment for the undisputed expenditures.
 {¶ 4} In 2006, Rachael was emancipated and the Shelby County Child Support Enforcement Agency ("CSEA") revisited the issue of child support for Megan. In May 2006, CSEA completed its administrative review and calculated that Norman's monthly support obligation should be $335.40, plus the CSEA two percent service fee. This was based upon child support worksheet calculations showing that Norman's income from workers' compensation was $30,342 and that Beverly's total annual income was $37,461.67, including overtime and interest income. CSEA calculated the child support as if Beverly had full residential custody because it is unable to consider support deviations for additional time spent with the minor child.
 {¶ 5} The matter came before a magistrate for a final hearing on January 19, 2007 and March 13, 2007, upon a motion for a hearing on the support modification recommendation filed by the CSEA and various other motions filed by both parties for contempt, custody, modifications of shared parenting, and for reallocation of parental rights and responsibilities. At the two-day hearing, the magistrate heard testimony from Norman, Beverly, a CSEA attorney, and others. *Page 4 
 {¶ 6} Concerning matters pertinent to this appeal, Norman testified that he was seriously injured in a work-related automobile accident in March 2003; that, as a result of the accident, he has been unable to work; that he receives $30,342 annual temporary total disability payments from the Ohio Bureau of Workers' Compensation; that he has not yet achieved his level of maximum medical improvement; that he received a personal injury cash settlement relating to this accident in early 2007; and, that he has placed approximately $650,000 in an investment fund, which is diversified and contains stocks. Norman claimed to have sustained losses of $18,000 on this fund in the first month, and upon cross-examination, he conceded that the money could be invested in a more conservative, guaranteed fund, such as a certificate of deposit.
 {¶ 7} Beverly testified that, although the shared parenting agreement called for an equal division of time, until recently, she usually had the children about 85 percent of the time; that the system for sharing expenses was not working because Norman would dispute many of the expenses and not pay his share; that she provided and paid for medical insurance for Megan through her employer; that she expected to earn $38,023 combined salary and overtime for the year, plus about $270 in interest income; and, that she was familiar with the rates local banks were paying for certificates of deposit and that those interest rates were about 4.8 percent to 5 percent per annum. *Page 5 
 {¶ 8} Thereafter, the magistrate filed a decision containing the following findings that are relevant to this appeal: that the parties should continue with a 50/50 shared parenting plan for Megan (with schedule modifications as recommended by the guardian ad litem); that the current method of sharing expenses is not working, so Norman should no longer be required to reimburse Beverly for one-half of the expenditures, but Norman should be ordered to pay child support; and that according to the definitions set forth in R.C. 3119.01 and the basic child support schedule set forth in R.C. 3119.021, Norman should pay child support in the amount of $271.33 per month, plus the CSEA service fee, effective June 1, 2006. The magistrate further found that Beverly should continue to maintain health insurance on Megan; that uninsured medical expenses should be paid equally by both parties; and, that Norman would be entitled to the tax dependency exemption, provided that he is current on his child support obligation.
 {¶ 9} The magistrate explained in detail how he calculated the child support and attached the supporting worksheets. In order to take into consideration the time spent with each parent under the shared parenting plan, the magistrate performed one calculation as if Beverly was the sole residential parent (finding Norman would pay $613.04 per month), he performed another calculation as if Norman was the sole residential parent (finding Beverly would pay $341.71 per month), and then he compared the two worksheets and calculated the difference *Page 6 
between the two obligations, finding that Norman should pay Beverly $271.33 per month, plus the CSEA service fee. When he computed the child support, the magistrate calculated $38,293.67 annual income for Beverly, including wages, averaged overtime, and $270 interest income. The magistrate determined that Norman's total income for child support computation purposes was $62,842, comprised of $30,342 in workers' compensation benefits and $32,500 per year in imputed interest income. In determining the amount of potential cash flow Norman could earn, the magistrate noted that Norman had assets of approximately $650,000 that were placed in an investment fund subject to market fluctuations. He took judicial notice of the fact that Norman could realize a return of 5 percent or more if he were to invest his assets in a secure certificate of deposit. The magistrate determined that interest income in the amount of $32,500 per year should be imputed to Norman, pursuant to Howell v.Howell, 167 Ohio App.3d 431, 2006-Ohio-3038, and Sizemore v.Sizemore (Oct. 14, 1994), 2d Dist. No. 13673, 1994 WL 558917.
 {¶ 10} Norman timely filed objections to the magistrate's decision and Beverly filed a memorandum in opposition.
 {¶ 11} In July 2007, the trial court overruled Norman's objections and adopted the magistrate's decision with the exception of the retroactivity of the child *Page 7 
support to June 1, 2006.[1] The trial court noted that Norman received the personal injury award in February 2007; that the child support order considered imputed interest income on the award in the child support computation; and, therefore, child support should commence retroactively to February 1, 2007, rather than June of 2006.
 {¶ 12} In August 2007, the trial court issued its final judgment order/entry.
 {¶ 13} It is from this judgment that Norman appeals, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED WHEN IT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT WHEN IT IMPUTED THIRTY-TWO THOUSAND FIVE HUNDRED DOLLARS ($32,500.00) ADDITIONAL ANNUAL INCOME TO THE APPELLANT WITHOUT AN EXPLICIT FINDING OF VOLUNTARY UNEMPLOYMENT OR VOLUNTARY UNDEREMPLOYMENT.
 {¶ 14} In his sole assignment of error, Norman argues that the trial court should not have included $32,500 potential interest on his $650,000 investment account as part of his income for purposes of calculating child support without first finding that he was voluntarily unemployed or underemployed. He states that it would be impossible for a court to reasonably determine that he was voluntarily unemployed because he has been unable to work due to the serious injuries he received in a work-related automobile accident. Norman contends that the trial *Page 8 
court abused its discretion when it affirmed the magistrate's decision to impute additional income to him without a finding of voluntary unemployment or underemployment as required by R.C. 3119.01(C)(11). Additionally, in his reply brief, Norman contends that his personal injury settlement should not be included under the statutory definition of "gross income" because R.C.3119.01(C)(7)(e) specifically excludes "nonrecurring or unsustainable income or cash flow items." Norman explains that he does not expect to be in another catastrophic accident, so he will not be receiving large cash settlements on a regular basis. We do not find merit in Norman's arguments.
 {¶ 15} It is well-established that a trial court's decision regarding child support obligations will not be disturbed on appeal absent an abuse of discretion. Dreher v. Stevens, 3d Dist. No. 4-05-20,2006-Ohio-351, citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144; see, also, Pendleton v. Pendleton, 3d Dist. No. 5-06-38, 2007-Ohio-3834, at ¶ 21 (trial court has considerable discretion in calculating child support). Likewise, a trial court's adoption of a magistrate's decision is reviewed under an abuse of discretion standard. Marchel v.Marchel, 160 Ohio App.3d 240, 243, 2005-Ohio-1499. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. *Page 9 
 {¶ 16} Child support must be calculated in accordance with the provisions of R.C. 3119.02 to 3119.24, including the basic child support schedule and the applicable worksheet. R.C. 3119.02. The overriding concern of the legislation is to ensure the best interest of the child for whom support is being awarded. Marker v. Grimm (1992),65 Ohio St.3d 139.
 {¶ 17} For purposes of child support computation, R.C. 3119.01(C)(5) defines "income" in two ways:
 (a) For a parent who is employed to full capacity, the gross income of the parent;
 (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.
(Emphasis added).
 {¶ 18} "Gross income" is defined by R.C. 3119.01(C)(7) as:
 [T]he total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses * * *; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; * * * spousal support actually received; and all other sources of income. "Gross income" includes income of members of any branch of the United States armed services or national guard * * *; self-generated income; and potential cash flow from any source.
(Emphasis added). *Page 10 
 {¶ 19} This statutory definition of "gross income" is very broad and is consistent with R.C. 3101.03(a) which requires a parent to support a child "out of the parent's property or by the parent's labor."Howell v. Howell, 2006-Ohio-3038, at ¶ 50. "[O]ne of the purposes of the `potential cash flow' provision in [the statute][2] * * * [is] to prevent a parent from avoiding child support obligations by shifting present income to a cash flow expected to be enjoyed at some future time, when the children have become emancipated." Sizemore v.Sizemore, supra.
 {¶ 20} R.C. 3119.01(C)(11) sets forth the definition of "potential income" for a parent who is voluntarily unemployed or underemployed as follows:
 "Potential income" means both of the following for a parent who the court * * * determines is voluntarily unemployed or voluntarily underemployed:
 Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria: * * * [list of employment factors to consider]
 Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant.
 {¶ 21} The various sections of R.C. 3119.01(C) define "income," "gross *Page 11 
income," and "potential income," and include references to, but do not specifically define, "potential cash flow" and "imputed income." According to R.C. 3119.01(C)(7), "gross income" includes "potential cash flow from any source," and is considered an integral part of "income," both for parents who are fully employed and for parents who are unemployed or underemployed. On the other hand, a determination of "potential income" pursuant to R.C. 3119.01(C)(11) requires a court to find that the parent is voluntarily unemployed or underemployed before imputing income for child support calculations. See, e.g., Rock v.Cabral (1993), 67 Ohio St.3d 108 (finding that a mother, who had a degree in accounting, was voluntarily underemployed as a weaver and imputing an income of $14,000 that she could have earned if she worked as an accountant).
 {¶ 22} Several cases support the proposition that "potential cash flow" is properly included as "gross income" for child support computation, and that no finding of voluntary unemployment or underemployment is required. See, e.g., Howell v. Howell, 2006-Ohio-3038
(finding that potential income in investment accounts, from an inheritance, was potential cash flow and was gross income for child support purposes); Sizemore v. Sizemore, supra (finding that a loan to a corporation that was not generating income at the time, a non-income producing asset, constituted a potential cash flow and was treatable as gross income); Murray v. Murray (1999), 128 Ohio App.3d 662 (finding that unexercised stock options *Page 12 
should be treated as potential cash flow and considered a part of gross income for child support purposes); and, Bishop v. Bishop, 4th Dist. No. 03CA2908, 2004-Ohio-4643 (finding that the potential income from rental property should be included in gross income for the purposes of child support calculations, even though the property was not being rented and was in need of repair).
 {¶ 23} In Sizemore, the trial court did not find that the child support obligor was voluntarily unemployed or underemployed, but it did find that it was proper to impute 12 percent interest upon $115,237 that the obligor had loaned to his corporation, even though he was not currently receiving any interest or return on this investment. The court utilized the "potential cash flow" provision in the statute in order to prevent the obligor from avoiding his current child support obligations by shifting potential present income to some future time, after the children were emancipated. Sizemore, supra.
 {¶ 24} In Howell, the father inherited over half a million dollars. The father testified that he could have earned $50,000 per year on the funds, but he chose not to do so. Instead, he made purchases and invested a large portion of the proceeds on land in Maine. The court of appeals found that the amount of "potential investment income" from the father's inheritances should be taken into account in calculating his "gross income" for child support purposes. Howell v. Howell,2006-Ohio-3038 at ¶ 55. *Page 13 
 {¶ 25} In Howell, the Second District Court of Appeals also specifically addressed the concept of mischaracterizing "potential cash flow" as "imputed income as follows:
 Courts do sometimes use the phrase "imputed income" when referring to potential cash flow, but that does not mean they have made a finding of voluntary unemployment or underemployment under R.C. 3119.01(C)(11). For example, the Court referred to "imputed income" in Murray when it discussed the potential income to be attributed to the appreciation in unexercised stock options. [Citations omitted.] However, the obligor in Murray was fully employed and the income was included as "potential cash flow from any source * * *. Using the word "imputed" is simply one way of describing potential income and does not mean that a Court has made a finding under R.C. 3119.01(C)(11) that income should be imputed because the obligor is unemployed or underemployed.
Howell v. Howell, 2006-Ohio-3038, at ¶ 54.
 {¶ 26} In the case before us, although the magistrate used the word "imputed" when he attributed interest income to Norman's gross income, the record clearly indicates that he was treating the $32,500 as a "potential cash flow," pursuant to R.C. 3119.01(C)(7) and not as "potential income" due to voluntary unemployment under R.C.3119.01(C)(11). There was never any discussion as to Norman's employment capabilities, and the magistrate specifically cited Sizemore andHowell to support the finding of the $32,500 as gross income for child support calculation purposes. Again, these cases support the proposition that potential cash flow is gross income for child support purposes whether or not a parent is *Page 14 
voluntarily unemployed or underemployed. It was not necessary to find that Norman was unemployed or underemployed to compute potential cash flow as a part of his gross income under R.C. 3119.01(C)(7).
 {¶ 27} Furthermore, Norman's argument in his reply brief that this income should be excluded from the definition of gross income does not accurately reflect the meaning of the statute. Norman correctly states that R.C.3119.01(C)(7)(e) specifically excludes "nonrecurring or unsustainable income or cash flow items" from the definition of "gross income" and that his personal injury award is a nonrecurring event.
 {¶ 28} However, R.C. 3119.01(C)(8) states that:
 "Nonrecurring or unsustainable income or cash flow item" does not include * * * any other item of income or cash flow * * * that the parent receives and invests or otherwise uses to produce income or cash flow for a period of more than three years.
 {¶ 29} We agree that Norman's personal injury settlement was most likely a one-time occurrence and that the amount of the award itself might be a nonrecurring income item. But, the trial court did not include the full amount of the settlement in Norman's income; it only included the amount of interest income he could potentially earn if the principal was placed in an income producing investment, such as a certificate of deposit. Therefore, this amount is not excludable from the definition of "gross income." *Page 15 
 {¶ 30} The issue before the trial court was the amount of Norman's income and his ability to provide support for Megan. Norman testified that he had over $650,000 in a financial institution. It was invested for the purpose of earning money or increasing its value, although Norman claimed that it had not yet done so. The trial court determined that this account could produce a potential cash flow from interest income that should be included as part of his gross income for the purposes of child support calculations. Furthermore, the magistrate took into account the amount of time the parties were to spend with Megan under the shared parenting agreement, and also eliminated Norman's obligation to pay for half of her expenses. We do not find any abuse of discretion in the trial court's calculation of Norman's child support obligation.
 {¶ 31} In addition to his single assignment of error, Norman mentions several other purported issues in his brief. However, he does not specify them as separate assignments of error, he does not provide any legal support or references for his position, and he does not argue them in his brief other than to mention them in the statement of facts and conclusion.
 {¶ 32} An appellant is required to include in its brief an argument as to each assignment of error "with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). This Court's local rules provide further guidance as to the appellant's brief. Loc.R. 7(A) states that an *Page 16 
appellant's brief should contain the information required by App.R. 16(A), and Loc.R. 11(A) states, "[e]ach assignment of error must be separately argued in the briefs unless the same argument, and no other, pertains to more than one assignment of error." Marysville Newspapers,Inc. v. Delaware Gazette Co., Inc., 3d Dist. No. 14-06-34,2007-Ohio-4365, ¶ 20. Since the issues mentioned were not specifically assigned as error, we need not address them, but we do offer the following review.
 {¶ 33} First, Norman asserts that the parties' incomes were already the subject of a stipulation and should not have been determined by the trial court. We do not find that the facts in this case support that contention.
 {¶ 34} Normally, a formal stipulation submitted to and accepted by the trial court as a stipulation of fact is the equivalent of proof made by both parties. Snyder v. Snyder, 3d Dist. No. 14-06-52, 2007-Ohio-2676. However, in the case sub judice, there was never any definitive determination as to whether there was a formal stipulation of income, whether it was accepted by the court, or the scope of what it included.
 {¶ 35} During the testimony from the CSEA attorney, the parties discussed stipulating to the numbers that CSEA had used on the child support worksheet representing the amount of Norman's workers' compensation and Beverly's salary. However, later in the hearing, the magistrate and both parties expressed uncertainty *Page 17 
as to whether or not a formal stipulation had been made, and as to exactly what any such stipulation may have encompassed. Both parties continued to elicit testimony concerning income and investments throughout the trial, proceeding as if there was no stipulation, or at least no stipulation as to the totality of their incomes. Given the testimony at the hearing, the parties' course of conduct, and the lack of any definitive approval by the magistrate, we do not find that there was any formal binding stipulation concerning all aspects of the parties' incomes.
 {¶ 36} Next, Norman claims that the trial court disregarded his testimony that he did not receive the money from his settlement until early 2007. The record clearly shows that the trial court took that date into consideration and sustained Norman's third objection to the magistrate's decision concerning this matter. The magistrate had proposed making the child support obligation retroactive to June 2006, but the trial court acknowledged that Norman had only recently received the large settlement, and made the child support order effective February 1, 2007.
 {¶ 37} Norman also contends that the trial court ignored his claim that he lost $18,000 on his investment account during the first few weeks that it was invested. Norman did not present any documentation of this alleged loss, nor did he present any indication that he expected to continue losing money on this investment. He did acknowledge that it was possible to place the money in an account that was not subject to such stock market fluctuations. *Page 18 
 {¶ 38} Finally, Norman complains that the trial court arbitrarily imputed a potential 5 percent interest as income on his monies. However, there was testimony before the trial court that local banks were paying 4.8 percent-5 percent interest on certificates of deposit, the magistrate stated he had taken judicial notice of the published rates of interest, and, the rate of interest he imputed was well below the statutory interest rates. See, e.g., R.C. 1343.03.
 {¶ 39} We do not find any merit in Norman's assignment of error nor in his unassigned assertions. The $271.33 per month child support order was thoughtfully calculated and is not unreasonable, arbitrary or capricious for an individual earning over $30,000 in workers' compensation benefits and who has a $650,000 investment account.
 {¶ 40} Accordingly, we overrule Norman's assignment of error.
 {¶ 41} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 PRESTON and WILLAMOWSKI, J.J., concur.
[1] The trial court's order overruling Norman's objections and adopting the magistrate's decision, in part, also varied in one other provision that is not related to this appeal.
[2] We note that the earlier cases discussing child support definitions and obligations are based upon R.C. 3113.215. This statute was repealed, effective March 22, 2001, but was replaced by R.C.3119.01, which is comparable to the provisions of the former R.C.3113.215 and does not vary in any way that affects our current analysis. *Page 1