RAPP, Appellee,

v.

RAPP, Appellant.

[Cite as *Rapp v. Rapp* (1993), 89 Ohio App.3d 85.]

Court of Appeals of Ohio,
Warren County.

No. CA92–10–092.

Decided Aug. 9, 1993.

*Timothy A. Oliver,* Warren County Prosecuting Attorney, and *Patrick Mac-Queeney,* Assistant Prosecuting Attorney, for appellee.

*Joseph W. Walker,* for appellant.

---

WALSH, Judge.

This is an appeal from a decision of the Domestic Relations Division of the Warren County Court of Common Pleas that granted a motion to decrease child support filed by appellant, Barney Rapp.

Appellant and appellee, Meldora Rapp, were granted a dissolution of their marriage on June 12, 1984 and custody of the parties' two children, then ages two and seven, was awarded to appellee. Pursuant to the terms of a separation agreement the parties signed, appellant agreed to pay $70 per week in child support. The amount of appellant's child support obligation has been altered on a number of occasions subsequent to the dissolution of the marriage.

The record shows that on July 24, 1992, appellant lost his job as a computer programmer for Cubic Systems in Dayton, Ohio. Thereafter, on August 3, 1992, he filed a motion to decrease his $96 a week child support payment. The court held a hearing on the matter and in a decision issued August 26, 1992 held as follows:

" * * * [T]he Defendant * * * at the present time is temporarily without a source of income. However, the Defendant presently has in excess of $35,000 in savings in an IRA account. The Court understands that the Defendant may have

expected that this IRA account would be held until the time of his retirement. It is perhaps unfortunate that he has temporarily lost his source of income. However, the Court cannot countenance the Defendant keeping his savings intact while his children go unsupported. Clearly, the Defendant is not without the means to support his children. The Court will order that the Defendant pay $30.00 per week for the support of each child."

The IRA at issue was established two years earlier in 1990 when appellant's employment with NCR Corporation terminated. At that time, evidence before the court showed, appellant "rolled over" or transferred his NCR retirement account into the IRA because NCR would no longer retain the account.

Appellant timely filed an appeal from the lower court's ruling and in a single assignment of error argues:

"The trial court's calculation of the appellant's child support obligation based solely upon retirement funds accumulated more than two (2) years ago was contrary to the mandates of Ohio Revised Code § 3113.21.5(A)(2), (3), (4) and (5), and was further clearly against the manifest weight of the evidence and an abuse of the trial court's discretion."

It is not disputed by the parties that the computation of the child support order is governed by R.C. 3113.215. For the purpose of calculating a child support obligation, "income" is defined by R.C. 3113.215(A) in the following manner:

"(1) 'Income' means either of the following:

"(a) For a parent who is employed to full capacity, the gross income of the parent;

"(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent.

"(2) 'Gross income' means, except as excluded in this division, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses to the extent described in division (B)(5)(d) of this section, commissions, royalties, tips, rents, dividends, severance pay, pensions, interest, trust income, annuities, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, spousal support actually received from a person not a party to the support proceeding for which actual gross income is being determined, and all other sources of income; self-generated income; and potential cash flow from any source.

" 'Gross income' does not include any benefits received from means-tested public assistance programs, including, but not limited to, aid to families with

dependent children, supplemental security income, food stamps, or general relief, does not include any benefits received for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration, and does not include any child support received for children who were not born or adopted during the marriage at issue.

"(3) 'Self-generated income' means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. 'Self-generated income' includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including, but not limited to, company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.

" * * *

"(5) 'Potential income' means both of the following for a parent that the court determines is voluntarily unemployed or voluntarily underemployed:

"(a) The income that the court determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides;

"(b) Imputed income from any nonincome-producing assets of a parent, as determined from the current rate of long-term treasury bills or another appropriate rate as determined by the court, if the income is significant."

It is appellant's contention that the court erred in calculating his income based solely on the only asset he possessed, the $35,000 IRA. According to appellant, a retirement fund that has been "rolled-over" into an IRA was not intended to be considered "income" under R.C. 3113.215(A) when calculating child support.

The definition of "income" as set forth in R.C. 3113.215 is intended to be both broad and flexible. See, e.g., Williams v. Williams (1991), 74 Ohio App.3d 838, 600 N.E.2d 739. Such an expansive definition is necessary, as appellee suggests, to ensure that the best interest of children, the intended beneficiaries of child support awards, are protected. The question before this court is whether a roll-over IRA that was established two years prior to the motion to decrease child support falls under that capacious definition.

Other appellate courts in Ohio have addressed closely analogous questions. In Albertson v. Ryder (1992), 85 Ohio App.3d 765, 621 N.E.2d 480, for example, the court held that annual interest from an obligor's IRA or employee savings plan

could be considered as gross income when determining child support. Similarly, a contribution to an obligor's pension plan has been held to amount to gross income for purposes of R.C. 3113.215(A)(2). *Parzynski v. Parzynski* (1992), 85 Ohio App.3d 423, 620 N.E.2d 93.

The lower court *sub judice* did not, however, predicate its child support order on either the interest income appellant gained from the IRA or on a contribution he made to the IRA. In fact, during the two year period he has maintained the IRA, appellant did not contribute any additional money to the retirement account. Rather, the court focused exclusively on an IRA that was created two years before the motion to decrease child support at issue was filed. Given these circumstances, both *Albertson* and *Parzynski* are of little value in resolving the question before us.

Upon applying the facts of this case to the language contained in those portions of the statute that define "income," namely R.C. 3113.215(A)(2), (3) and (5), it is our belief that a roll-over IRA cannot be used by a domestic relations court to calculate an obligor's income. R.C. 3113.215(A)(3) involves self-generated income and is simply not implicated in the instant action. R.C. 3113.-215(A)(5)(b) does allow the court to impute income from "nonincome-producing assets of a parent" by applying treasury bill rates when the parent is voluntarily unemployed and, at first blush, appears pertinent to this case. Yet, an IRA is an asset that produces income and thus does not come within the definition of a "nonincome-producing asset." See *Pelikan v. Pelikan* (July 1, 1993), Cuyahoga App. No. 62962, unreported, 1993 WL 243076.

Nor does the principal of a roll-over IRA constitute gross income. Although R.C. 3113.215(A) explicitly provides that the definition of "gross income" is not limited solely to the list of items contained in the statute, which an IRA is not, we do not believe that the legislature intended to have a rollover IRA used as gross income when calculating child support. See *Hoblit v. Hoblit* (May 15, 1991), Miami App. No. 90–CA–43, unreported, 1991 WL 82956 ("rollover" of obligor's ESOP plan to his 401[K] retirement account not considered new income for the purpose of computing current child support order, as the "rollover" is not new money earned but a transfer of existing funds).

In accordance with the aforesaid, we find the trial court abused its discretion when it used the $35,000 IRA to calculate appellant's gross income. R.C. 3113.215(A) does not allow such an asset to be used for this purpose. Accordingly, the cause is remanded to the lower court with instructions that appellant's income be re-calculated before the court rules on the motion to decrease child support. Appellant's sole assignment is hereby sustained.

The judgment of the trial court is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

KOEHLER, P.J., and WILLIAM W. YOUNG, J., concur.