[Cite as *Patel v. Patel*, 2014-Ohio-2150.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Aavaben K. Patel,                                    :

       Plaintiff-Appellee,                     :

                                                 No. 13AP-976

v.                                                   :            (C.P.C. No. 13DR-02-511)

Bkamikkumar J. Patel,                                :            (REGULAR CALENDAR)

       Defendant-Appellant.                    :

---

D E C I S I O N

Rendered on May 20, 2014

---

*Sonjay K. Bhatt*, for appellee.

*Ron Khasawneh,* for appellant.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

DORRIAN, J.

{¶ 1}   Appellant, Bkamikkumar J. Patel ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a decree of annulment of his marriage to appellee, Aavaben K. Patel ("appellee"), and finding his counterclaim for divorce to be moot.  For the following reasons, we affirm.

{¶ 2}   Appellant and appellee are both of Indian descent and are practicing Hindus. Their parents arranged their marriage, which was legalized on April 12, 2011, in Franklin County.  Appellee had met appellant, for a few hours at a time, on several occasions prior to legally marrying him.   Consistent with their religious beliefs, however, the parties agreed that they would not consummate their marriage until after a Hindu wedding ceremony had been celebrated.  They initially planned for the Hindu ceremony to take place in December 2011.  Accordingly, after the civil marriage ceremony, appellant, a mechanical engineer,

returned to his home in Maryland, where he was employed, and appellee continued to live with her parents in Franklin County.

{¶ 3} Appellee's mother, however, became seriously ill and the couple postponed their planned December 2011 Hindu wedding ceremony. Appellant visited appellee in Columbus on several occasions after they were legally married and stayed in the home of appellee's parents during those visits. But during those visits, appellant slept in a room separate from appellee.

{¶ 4} In January 2012, appellee's mother died. After her death, both parties traveled to India to conduct an ashes-distribution ceremony and to shop for the wedding. The parties rescheduled the Hindu ceremony for April 2012. While in India, appellee, accompanied by appellant, purchased a wedding dress and other items for the wedding. In March 2012, appellee returned to the United States. Appellant, however, did not return to the United States, and no April 2012 Hindu ceremony occurred. Rather, appellant remained in India until July 2012.

{¶ 5} At trial, the parties disagreed as to the reason why the Hindu wedding ceremony did not occur. Appellee testified that, throughout 2011 and through April 2012, she remained willing to participate in a Hindu ceremony and to thereafter consummate the marriage. She stated that, after she returned to the United States from India, appellant made excuses and postponed the wedding several times; they stopped communicating by telephone; and ultimately stopped contacting each other altogether. She testified that it became apparent to her that appellant did not want to go through with the wedding.

{¶ 6} Appellee further testified that she believed appellant entered into the civil marriage in order to obtain permanent resident status in the United States. Appellee was a citizen of the United States and, shortly after the civil marriage, had, with the assistance of family members, filed an visa application on appellant's behalf based on the grounds that they were legally married. As a result, appellant received a conditional green card authorizing him to remain in the United States as a permanent resident.

{¶ 7} Appellant also testified at trial. He stated that, in April 2011, he was in the United States on a student visa and was working in Maryland in an immigration status described as optional practical training status, although he had also applied for an H1-B work visa. He acknowledged traveling to India with appellee in early 2012 and

accompanying her when she purchased her wedding dress. He stated that he remained in India through July 2012 because his mother and grandmother were in poor health, and he wanted to care for them. He acknowledged that he could not have reentered the United States in July 2012 had he not had the green card he had obtained as a result of the application filed by appellee and her family. He expressly denied, however, that he had married appellant in order to obtain a green card. He testified that he obtained new employment in the state of Virginia in August 2012 and that he was not aware of the effect an annulment of his legal marriage would have on his immigration status.

{¶ 8} Appellant further testified that, when they were both in India in early 2012, he had asked appellee to participate in a small Hindu wedding ceremony there and stay with him to help him care for his ailing relatives. He stated that she refused and, instead, returned to the United States in March 2012. He testified that, when he returned to the United States in July 2012, appellee's father and uncle had already suggested by telephone and e-mail that they intended to initiate proceedings to terminate the civil marriage. Appellant stated the he, therefore, had no reason to suggest a date for a rescheduled Hindu wedding ceremony. He testified, in short, that it was appellee, rather than he, who backed out of the Hindu ceremony.

{¶ 9} At trial, both parties acknowledged that they shared a mutual understanding that they would not consummate the marriage until after the Hindu wedding ceremony had been conducted, consistent with the religion they shared. Both parties testified that a Hindu ceremony never occurred, they never consummated the marriage, and they have never lived together as man and wife.

{¶ 10} The trial court entered a judgment declaring the marriage of the parties to be void and of no effect "for the reason that the marriage between [appellee] and [appellant], although otherwise valid, was never consummated." (Oct. 22, 2013 Decree, 6.) The court characterized appellant's testimony as "vague and evasive," causing the court to question his veracity. It concluded that appellant had, "at the very least avoided the performance of their religious ceremony." (Decree, 5.) The court further found that appellee, on the other hand, had "provided clear and satisfactory evidence that she remained ready and willing to commit to [appellant] in a Hindu wedding ceremony (and consummate the marriage thereafter) but that [appellant] continually postponed the ceremony and eventually cut off

all communication with her." (Decree, 5.)   The court rejected, however, appellee's claim that appellant had fraudulently induced her to enter into the civil marriage for immigration purposes.

{¶ 11} The trial court determined that appellant was entitled to an annulment pursuant to R.C. 3105.31(F) and 3105.32(F).  It cited *Lang v. Reetz-Lang*, 22 Ohio App.3d 77 (10th Dist.1985)  as authority for the proposition that those statutes "mean that '[w]here one of the parties has willfully or knowingly refused or avoided consummation of the marriage, the other has a proper ground for annulment, although the marriage was valid otherwise.' " (Decree, 4.)

{¶ 12} The trial court recognized that, in *Lang*, this court found that annulment requires a finding that the defendant is somehow at fault for not consummating the marriage. It questioned *Lang's* holding that annulment requires a finding of fault, observing that the case before it presented fairly unique circumstances that were most likely not considered in 1963 when the annulment statutes were adopted.  It found that both parties strictly adhered to their Hindu faith and practices and opined that "[a] person should not be denied an annulment because his or her religious practices have caused a delay in consummation when the Hindu wedding ceremony forbids consummation before said ceremony." (Decree, 6.)  The trial court observed that, to the extent that a showing of fault was required, the "Hindu ceremony was a condition precedent to the consummation of the marriage, and [appellant's] failure to go through with the wedding then, constitutes the required 'fault.' " (Decree, 6.)

{¶ 13} Appellant has raised two assignments of error, as follows:

I. The Trial Court erred and abused its discretion in awarding Plaintiff-Appellee an annulment on the basis of lack of nonconsummation [sic] when both parties agreed not to consummate the marriage and when the parties both had good cause to postpone their religious ceremonies.

II. The Trial Court erred and abused its discretion in awarding Plaintiff-Appellee an annulment on the basis of lack of nonconsummation [sic] when her testimony was not supported by other credible evidence as required by Ohio Rule of Civil Procedure 75(M).

{¶ 14} We are unaware of specific precedent expressly discussing the appropriate standard of appellate review to be applied in annulment cases. We are, however, cognizant of our obligation generally to uphold the judgments of domestic relations courts absent a finding that the court abused its discretion. *Scinto v. Scinto*, 10th Dist. No. 09AP-5, 2010-Ohio-1377, ¶ 4, citing *Booth v. Booth*, 44 Ohio St.3d 142 (1989) ("The standard of review in domestic relations cases is whether the trial court abused its discretion."). *See also Dagostino v. Dagostino*, 165 Ohio App.3d 365, 2006-Ohio-723, ¶ 12 (4th Dist.) (applying abuse-of-discretion standard of review to trial court's determination whether the plaintiff-appellee had established grounds for divorce). Moreover, in *Buckles v. Buckles*, 46 Ohio App.3d 102, 116 (10th Dist.1988), we recognized in a divorce case that the trial court has a "large measure of discretion to determine the sufficiency of the evidence, the credibility of the witnesses and the weight to be given to the testimony" and that "[a] trial court has broad discretion to determine the proper grounds for divorce, and such finding should not be overturned in the absence of any showing that there was an abuse of discretion of such a nature as to * * * prejudicially affect the complaining party." *Id.*

{¶ 15} In the case before us, both appellant and appellee sought termination of the marriage and agreed on the underlying facts. While in this case appellant sought divorce as the vehicle for terminating the marriage, and appellee sought annulment, the foregoing precedent is nevertheless instructive and we therefore apply an abuse-of-discretion standard of review. "An abuse of discretion occurs where a trial court's decision is 'unreasonable, arbitrary or unconscionable.' " *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 12AP-1042, 2014-Ohio-1252, ¶ 6, quoting *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶ 16} In his first assignment of error, appellant suggests that he was not at fault in failing to participate in a Hindu wedding ceremony because he had good cause to stay in India and care for his ill mother and grandmother, rather than return to the United States and participate in a Hindu wedding ceremony in April 2012. He argues that, pursuant to *Lang*, appellee could not be awarded an annulment, and the court, therefore, should have proceeded to adjudicate his counterclaim seeking divorce.

{¶ 17} We first review the two statutes that govern annulment in Ohio, R.C. 3105.31 and 3105.32. Both statutes were enacted in 1963 and have not been revised or amended since.[1]

{¶ 18} As relevant to this case, R.C. 3105.31 provides, as follows:

A marriage may be annulled for any of the following causes existing at the time of the marriage:

* * *

(F) That the marriage between the parties was never consummated although otherwise valid.

{¶ 19} As relevant to this case, R.C. 3105.32 provides:

An action to obtain a decree of nullity of a marriage must be commenced within the periods and by the parties as follows:

* * *

(F) For the cause mentioned in division (F) of section 3105.31 of the Revised Code, *by the party aggrieved* within two years from the date of the marriage.

(Emphasis added.)

{¶ 20} It is apparent that neither statute expressly references fault or makes fault on the part of one of the parties a requisite to annulment. In *Lang*, however, the court held in its syllabus that an annulment on the grounds of lack of consummation pursuant to R.C. 3105.31(F) "does require some finding of fault on the part of the defendant." The court justified its inclusion of fault as a requisite for annulment based on the inclusion of the term "party aggrieved" in R.C. 3105.32(F) to describe a plaintiff in an annulment action. The court reasoned as follows:

The proper interpretation of R.C. 3105.31(F) and 3105.32(F) is that *an action based upon nonconsummation contemplates that the defendant is somehow at fault.* The language utilized in R.C. 3105.32(F) imparts this meaning—the "party aggrieved" brings the action for nonconsummation. One treatise writer has

---

[1] Prior to the 1963 enactment of R.C. 3105.31 and 3105.32, Ohio courts annulled marriages as an exercise of their equitable authority. *See Waymire v. Jetmore*, 22 Ohio St. 271 (1872); *Duncan v. Duncan*, 88 Ohio App. 243, 244 (9th Dist.1950) (observing that, as of the date of the decision in 1950,"there are no statutory grounds for annulment in Ohio. Such action is cognizable only in a court of equity").

> indicated that the draftsmen had in mind, in addition to impotency, a willful refusal to consummate the marriage without good cause as a ground for annulment. The court finds this is to be a logical interpretation of the nonconsummation subsection. *Where one of the parties has willfully or knowingly refused or avoided consummation of the marriage, the other has a proper ground for annulment, although the marriage was valid otherwise.*

(Emphasis added.)  *Id.* at 79.

{¶ 21} The court in *Lang* thus interpreted R.C. 3105.31(F) and 3105.32(F) to mean that, where one spouse has willfully or knowingly refused to consummate the marriage, the other spouse is an "aggrieved party" who has grounds for annulment.  It specifically held that the spouse seeking annulment was not required to prove that the defendant was physically incapable of consummating the marriage, observing that, although "R.C. 3105.31(F) includes the condition of impotency," *id.*[2] at 79, a willful or knowing refusal or avoidance of consummation also constitutes a proper ground for annulment.

{¶ 22} Appellant argues that he may not be found to be "at fault" for the nonconsummation of the marriage as he and appellee had agreed to defer consummation until after a Hindu wedding ceremony and because he had good cause to stay in India through July 2012, i.e., to care for ailing relatives.  He argues that the fact that the marriage was not consummated was therefore not "his fault."  We reject this argument.   Read in the context of the facts before it, the *Lang* court held that, where a party has willfully or knowingly refused or avoided consummation of the marriage, that party is "somehow at fault." Indeed, in *Lang*, as in the case before us, "[o]n the parties' wedding night, they failed to consummate the marriage and, thereafter, neither party made any further attempt to consummate."  *Id.* at 78.  The *Lang* court nevertheless affirmed the annulment decree, noting that the trial court's failure to specifically assign fault to the defendant was not prejudicial error, as the record clearly demonstrated that the defendant had "knowingly" avoided, if not outright refused, to participate in intercourse with the plaintiff.  In short, we do not interpret *Lang* as requiring a trial court to determine that a party was at fault by

---

[2] *But see Kugel v. Kugel*, 6th Dist. No. H-91-1 (Dec. 20, 1991), holding that a husband's physical inability to consummate the marriage did not constitute grounds for annulment where both parties were aware of that inability prior to the marriage, and the husband, rather than the wife, sought the annulment.

willfully avoiding consummation. Rather, *Lang* clearly contemplates that, in the absence of such a finding of fault, a finding that the parties knowingly did not consummate their marriage would satisfy R.C. 3105.31(F).

{¶ 23} In the case before us, the trial court found, as a matter of fact, that the marriage between appellant and appellee was never consummated because appellant avoided the performance of a Hindu wedding ceremony. It is undisputed that appellant knowingly abstained from intercourse, even though they were legally married. Therefore, consistent with *Lang*, we find that the trial court did not err in concluding the criteria of R.C. 3105.31(F) had been met. The fact that appellee may have also agreed to defer consummation until after a Hindu ceremony does not mandate a different conclusion.

{¶ 24} The trial court did not abuse its discretion in awarding appellee an annulment as she (1) proved at trial that "the marriage between the parties was never consummated although otherwise valid," thereby establishing grounds for annulment pursuant to R.C. 3105.31(F); and (2) held the status of an "aggrieved party," as that term is used in R.C. 3105.32(F) and interpreted in *Lang*. We therefore overrule appellant's first assignment of error.

{¶ 25} We turn to appellant's second assignment of error, which asserts that a decree of annulment was invalid because appellant's testimony was not supported by other credible evidence as required by Civ.R. 75(M).

{¶ 26} Civ.R. 75(M) provides:

> Judgment for divorce, annulment, or legal separation shall not be granted upon the testimony or admission of a party not supported by other credible evidence. * * * The parties, notwithstanding their marital relations, shall be competent to testify in the proceeding to the same extent as other witnesses.

{¶ 27} This court has previously considered similar arguments based on Civ.R. 75(M). In *Young v. Young*, 10th Dist. No. 95APF03-247 (Dec. 19, 1995), we affirmed a decree of divorce where the husband had, through his testimony at trial, corroborated his wife's allegation of infidelity where there was no evidence that his testimony was untrue or that improper influences had been brought against him to prompt him to testify as he had. Accordingly, we found that the entry of divorce on grounds of adultery did not violate the

dictates of Civ.R. 75(L) (now Civ.R. 75(M)[3]).   Similarly, in *Brooks-Lee v. Lee,* 10th Dist. No. 03AP-1149, 2005-Ohio-2288, a husband challenged a judgment of divorce claiming that the wife had failed to introduce corroborating evidence of a statutory ground for divorce. We rejected the argument, finding that both parties had testified that the defendant had left the marital residence in 2005 and that there was sufficient evidence that the parties had lived separately and apart without cohabitation for one year.  *Id.* at ¶ 65.  Moreover, other courts of appeals have recognized that the corroboration requirement imposed by the civil rule may be satisfied by the testimony of a defendant spouse.  *Accord Thomas v. Thomas*, 5 Ohio App.3d 94 (5th Dist.1982) (holding that a wife's testimony concerning her husband's adultery was corroborated by the non-collusive in-court testimony of the husband himself and sufficient under Civ.R. 75(L) for the grant of a divorce); *Minnick v. Minnick*, 12th Dist. No. CA89-12-029 (July 23, 1990) (recognizing that Civ.R. 75(L) did not prohibit a decree of divorce where both parties admitted appellant's adultery, as "the testimony or admission of one party supports that of the other and provides the necessary corroborating evidence." *Id.*

{¶ 28} Consistent with this precedent, we find that appellant himself provided corroborating evidence of nonconsummation.  He did so by testifying at trial that he knowingly agreed to delay consummation pending a religious wedding ceremony and that such a ceremony never occurred, nor did consummation of the marriage.  We observe, as well, that interpreting Civ.R. 75(M) to require additional corroborative evidence of nonconsummation beyond the testimony of both spouses might well prove highly problematic in a case such as the one before us.  Not only does proof of nonconsummation require the plaintiff to prove a negative, i.e., that sexual intercourse did not occur, but the question of whether a marriage was consummated generally lies exclusively within the personal knowledge of the two spouses.

---

[3] Civ.R. 75 has been revised on several occasions since the adoption of the Civil Rules, causing the provision at issue in this case to be identified as Civ.R. 75(L) during certain periods of time and as Civ.R. 75(M) during others.  *See Brooks v. Brooks*, 10th Dist. No. 87AP-980 (Nov. 1, 1988), at fn.1, noting that "Civ.R. 75(M) was renumbered in 1977 and is now Civ.R. 75(L)."  *See also* the 1998 Official Comment to Civ.R. 75, stating that, in 1998, a new division was added to Civ.R. 75 and that "the remainder of the divisions were relettered accordingly."

{¶ 29} We therefore overrule appellant's second assignment of error.

{¶ 30} For the foregoing reasons, both of appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

*Judgment affirmed.*

TYACK and O'GRADY, JJ., concur.

_____