[Cite as *Misra v. Mishra*, 2018-Ohio-5139.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kavita Misra, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 17AP-306 |
| v. | : | (C.P.C. No. 15DR-4160) |
| Naveen Mishra, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

## D E C I S I O N

### Rendered on December 20, 2018

**On brief:** *Arenstein & Andersen Co., LPA, Jessica L. Sohner,* and *Nicholas I. Andersen,* for appellant. **Argued:** *Jessica L. Sohner.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

HORTON, J.

{¶ 1} Plaintiff-appellant, Kavita Misra, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, which granted a divorce to appellant and appellee, Naveen Mishra, pro se, and determined the division of property, spousal support, and all issues related to the parties' two children. Appellee did not file an appellee's brief. For the following reasons, we reverse in part and affirm in part the judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The following are the pertinent facts and procedural history. Appellant and appellee were married on November 4, 2003 in New Delhi, India, and moved to the United States shortly thereafter. The parties have two minor children born as issue of the marriage. The parties separated on or about October 19, 2015, after a domestic disturbance which

resulted in appellee being found guilty of violating R.C. 2919.25(A), domestic violence, and R.C. 2903.13(A), assault.

{¶ 3}  Appellant filed a complaint for divorce on November 9, 2015. Appellee filed his answer and counterclaim on December 18, 2015. On December 20, 2016, the parties entered into a stipulated agreement as to separate property that was read into the record at trial and admitted as a joint exhibit. (Joint Ex. 2.) Specifically, appellee stipulated that "[appellee] hereby expressly agrees that the sum of $500,000.00, plus the passive income derived from the same, constitutes a gift to [appellant] and shall be awarded to [appellant] as her separate property pursuant to R.C. § 3105.171(A)(6)(a)(vii)." (Joint Ex. 2 at ¶ 4.) In addition, the parties agreed that separate non-marital funds from the gift totaling $16,976.34 would be transferred to appellant. Both parties concede that appellee transferred to appellant the cash sum of $500,000 days before appellant filed for divorce.

{¶ 4}  This matter was tried before the trial court on January 17, February 22, 23, 27, and March 2 and 3, 2017. The evidence showed that, at the time of the trial in the case, appellee was employed as a software engineer with JP Morgan Chase, where he had been employed for the past 10 years. Appellee has been employed in the same field for approximately 23 years and was earning $96,500 at the time of trial. Prior to the parties' marriage, he had obtained a bachelor of arts degree in commerce from a school in India.

{¶ 5}  Prior to the parties' marriage, appellant had obtained a degree of arts in psychology from a school in India. At the start of this trial, appellant was employed as a part-time assistant with two different employers: Dublin Latchkey (since November 2016) and The Barrington School (since January 2017).

{¶ 6}  The trial court was troubled by appellant's handling of her separate property assets. Appellant testified that she earned a mere $675 in interest income in 2016 on accounts whose balances totaled in excess of $500,000. She also readily admits that Indian banks routinely pay 8 percent interest per year and that she presently earns 9.25 percent interest per year on her existing Axis Bank Fixed Deposit account. The trial court asked her "[w]hy haven't you moved [her accounts] to something that is going to make more money?" (Jan. 17, 2017 Tr. Vol. II at 222.) Appellant responded, "I didn't want to move it while I was

in trial." *Id.* Appellant did say that after the divorce she would discuss her finances with a professional. (Tr. Vol. II at 223.)

{¶ 7} On March 29, 2017, the trial court issued its "Judgment Entry–Decree of Divorce" (hereinafter "Divorce Decree"). As relevant to this appeal, in the Divorce Decree the trial court granted both parties an "absolute divorce" from each other. *Id.* In addition, the parties stipulated that appellant's earned income was $16,848. (Divorce Decree at 13.) The trial court also found that appellant voluntarily elected to forego pursuing meaningful, full-time employment, and she has never worked full time during the course of the parties' marriage. As such, the trial court found that appellant is voluntarily underemployed and electing not to work on a full-time basis although she is entirely capable of doing so. Hence, her income would be imputed at a figure higher than her stipulated current annual earnings of $16,848. (Divorce Decree at 14.)

{¶ 8} The trial court, in attempting to apply R.C. 1343.03 and 5703.47 found that "the annual interest rate for tax year 2017 tax obligations will be 6% annually plus 3% = 9%." (Divorce Decree at 18.) As such, the trial court imputed interest income at 9 percent on appellant's accounts, which totaled $515,353, for an interest income total of $46,382. *Id.*

{¶ 9} Furthermore, the trial court found that no impediments existed to appellant working full-time. (Divorce Decree at 22.) Therefore, the trial court imputed full-time employment to appellant at the same rate of pay she was receiving as a part-time employee, which increased her yearly income from the stipulated amount of $16,848 to $22,880. (Divorce Decree at 18.) As such, appellant was deemed to an imputed income amount of $69,262. Again, the court found that appellee's income was $96,500 per annum. *Id.*

{¶ 10} The trial court utilized these income amounts in deciding that appellee was to pay child support in the amount of $954 per month, and that he would maintain primary health insurance coverage for the children. (Divorce Decree at 10-11.) In addition, pursuant to R.C. 3119.01, the parties would equally pay the first $100 of the reasonable and ordinary uninsured and unreimbursed medical expenses for the minor children, and any extraordinary medical expenses (defined as those exceeding the first $100) including co-payments and/or deductibles would be divided between the parties with appellant paying 42 percent and appellee paying 58 percent of such expenses. (Divorce Decree at 11.) The

trial court also found that appellant was not entitled to spousal support. (Divorce Decree at 22.)

## II. ASSIGNMENTS OF ERROR

{¶ 11} Appellant appeals and raises the following assignments of error for our review:

> [I.] The trial court erred and abused its discretion when it concluded that Appellant was voluntarily underemployed pursuant to R.C. § 3119.01.
>
> [II.] The trial court erred and abused its discretion when it imputed income to Appellant in the amount of $69,262 per year.
>
> [III.] The trial court erred and abused its discretion when it failed to calculate Appellee's child support obligation in accordance with R.C. § 3119.01, et seq. and further divided the uninsured health expenses according to an erroneous allocation of the parties' income.
>
> [IV.] The trial court erred and abused its discretion when it determined that spousal support is not warranted or supported by the evidence.
>
> [V.] The trial court erred and abused its discretion when it arbitrarily disregarded the parties' stipulation that $16,976.34 of funds held in the parties' bank accounts were non-marital separate property and included the funds in its division of marital assets.

## III. STANDARD OF REVIEW

{¶ 12} We first note that generally the judgments of domestic relations courts are upheld absent a finding that the court abused its discretion. *Patel v. Patel*, 10th Dist. No. 13AP-976, 2014-Ohio-2150, ¶ 14, citing *Scinto v. Scinto*, 10th Dist. No. 09AP-5, 2010-Ohio-1377, ¶ 4, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 13} We note that the trial court, as trier of fact, "was in the best position to assess the credibility of the witnesses and to determine which testimony it found believable."

*Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-541, 2010-Ohio-2774, ¶ 32, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77 (1984). In addition, "we always bear in mind the trial court's large measure of discretion to determine the sufficiency of the evidence, the credibility of the witnesses and the weight to be given to the testimony." *Buckles v. Buckles*, 46 Ohio App.3d 102, 116 (10th Dist.1988). *See also Chapman v. Chapman*, 10th Dist. No. 04AP-812, 2005-Ohio-2801, ¶ 14.

## IV. DISCUSSION

{¶ 14} In general, appellant argues that the trial court erred as to the parties' respective income/earning capacity in calculating appellee's child support obligation, and additionally in finding that spousal support was not warranted. As a result of the improper calculation of the parties' income, appellant submits that the trial court's calculation as to support was erroneous and an abuse of discretion.

### A. ASSIGNMENT OF ERROR ONE–VOLUNTARILY UNDEREMPLOYED

{¶ 15} In assignment of error one, appellant submits that the trial court committed error and an abuse of discretion in concluding that appellant was voluntarily underemployed because: (1) the parties stipulated to appellant's earning capacity, and (2) competent and credible evidence was not presented by appellee to support a finding that appellant was voluntarily underemployed.

{¶ 16} Pursuant to R.C. 3119.01(C), income for child support purposes is defined to include the sum of the parent's gross income and "any potential income of the parent." R.C. 3119.01(C)(5)(b). Potential income includes imputed income that the court determines the parent would have earned if fully employed based upon the criteria articulated in R.C. 3119.01(C)(11)(a)(i) through (x). Even if defendant were "totally unable to earn any real or potential income" as found by the trial court, the statutory duty of support attaches to available assets pursuant to R.C. 3103.03 and 3113.215(A) and (B).[1] *Williams v. Williams*, 10th Dist. No. 92AP-438 (Sept. 24, 1992).

---

[1]"In *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, the Supreme Court of Ohio held that 'the terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects.' *Id.* at paragraph two of the syllabus. We note that R.C. 3113.215 was repealed effective March 22, 2001, and was replaced by R.C. 3119.01. Because the provisions of R.C. 3119.01 are comparable to those in R.C. 3113.215, the court's statements regarding R.C. 3113.215 apply to R.C. 3119.01." *Apps v. Apps*, 10th Dist. No. 02AP-1072, 2003-Ohio-7154, ¶ 47.

{¶ 17} As we stated in *Meeks v. Meeks*, 10th Dist. No. 05AP-315, 2006-Ohio-642, ¶ 35:

> [B]efore a trial court may impute income to a parent, it must first find that the parent is voluntarily unemployed or underemployed. *Inscoe v. Inscoe* (1997), 121 Ohio App.3d 396, 424, 700 N.E.2d 70; *Marek v. Marek*, 158 Ohio App.3d 750, 2004 Ohio 5556, at P14, 822 N.E.2d 410. Whether a parent is voluntarily unemployed or underemployed is a determination within the trial court's discretion and will be upheld absent an abuse of discretion. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218.

Once a party is found to be voluntarily underemployed, the court may impute income to that party for purposes of calculating support. *Apps v. Apps*, 10th Dist. No. 02AP-1072, 2003-Ohio-7154, ¶ 48. As we said in *Harper v. Harper,* 10th Dist. No. 01AP-1314, 2002-Ohio-4320, ¶ 24:

> The decision to impute income to a parent involves a two-step process. *Smith v. Smith* (Feb. 10, 2000), Franklin App. No. 99 AP-453, 2000 Ohio App. LEXIS 415. First, the trial court must conclude that the parent is voluntarily unemployed or underemployed. *Id.* If the court so finds, then the trial court must determine the amount of income to impute based on the factors set forth in R.C. [3119.01(C)(11)(a)] and the facts and circumstances of the case. *Id.*

{¶ 18} Pursuant to R.C. 3119.01(C)(11)(a), when imputing income to a parent, the trial court must consider the enumerated factors. *Meeks* at ¶ 37. The trial court made the following findings regarding the underemployed issue:

> In this case, Plaintiff has never been employed on a full-time basis. Although she concedes that she earned the same degree as Defendant, she argues that initially Defendants controlling manner prevented her from working outside the home. Then later in the relationship, she simply experienced difficulty finding suitable employment with her degree given her lack of work experience. However, by the time of trial, Defendant and Plaintiff had been living separate and apart for nearly 18 months. Both parties concede that Defendant transferred to Plaintiff's sole dominion and control the cash sum of $500,000 days <u>before</u> the date of filing of the instant Complaint for Divorce on November 9, 2015. Therefore, for quite some time now, Plaintiff has enjoyed the *freedom* to pursue work and/or

> education opportunities, and she has possessed the financial means to facilitate the same — *but elected not to do so.*
>
> * * *
>
> In this case, the testimony and evidence establishes that Plaintiff voluntarily elects to forego pursuing meaningful, full-time employment, and she has never worked full time during the course of the parties' marriage.
>
> Through his examination of Plaintiff, Defendant proves that the parties' children have only been enrolled in limited extra-curricular activities and only since November of 2016. The parties agree that Plaintiff sought and obtained her *first* part-time job on/about November 21, 2016.
>
> * * *
>
> Indisputably, Plaintiff is voluntarily underemployed and electing not to work on a full-time basis although she is entirely capable of doing so. Hence, her income shall be imputed at a figure higher than her stipulated current annual earnings of $16,848.

(Emphasis sic.) (Divorce Decree at 12-14.)

{¶ 19} Appellant argues that, on the first day of trial, the parties stipulated as to both appellant's income and earning capacity in the amount of $16,848. Appellant reasons that because the trial court accepted the parties' stipulation as to appellant's income and earning ability, it was unnecessary to make further factual findings on these issues.

{¶ 20} Appellant's argument is based on the following testimony elicited by the court:

> THE COURT: So you are withdrawing your statement and saying that 16,848 is a fair statement of her income or earning potential?
>
> MR. MISHRA: No. Actually, if she calculate everything, she can earn a lot more.
>
> THE COURT: Pardon me?
>
> MR. MISHRA: She can earn more.

THE COURT: Then what is the number that you are going to be proposing to the Court.

MR. MISHRA: I'm not ready for that right now.

THE COURT: What do you mean you are not ready for that?

MR. MISHRA: I am okay with 16,800.

THE COURT: We are not going to do this. We're not going to go back and forth. We're not. So I will ask you one last time. Are you stipulating that your wife's income or earning ability is, in fact, 16,848, yes or no?

MR. MISHRA: Yes.

(Tr. Vol. I at 36.)

{¶ 21} Appellant argues that appellee stipulated to appellant's income *and* earning capacity. First, we note that the trial court asked appellee if he was stipulating to appellant's income *or* earning capacity. At this opening stage of the trial, the trial court did not clarify whether the stipulation was to income and/or earning capacity. However, the trial court interpreted the stipulation as applying to income only. Later in the trial, the trial court allowed appellee, over appellant's objection, to testify as to his estimation of appellant's actual income and earning capacity. (Tr. Vol. III at 459-61, 465.) The trial court specifically found that the parties did not stipulate as to earning ability. (Tr. Vol. III at 460.) Our review shows that the trial court did not abuse its discretion in finding that appellee's stipulation applied only to income.

{¶ 22} Appellant further argues that competent and credible evidence was not presented by appellee to support a finding that appellant was voluntarily underemployed. Appellant claims that because that the trial court did not properly follow the requirements of R.C. 3119.01, it erred and abused its discretion in determining appellant's income for purposes of calculating support obligations. Appellant cites to our cases of *Chapman* and *Apps*.

{¶ 23} However, *Chapman* and *Apps* are clearly distinguishable from the present action. In *Chapman*, "the trial court did not explicitly refer to R.C. 3119.01(C)(11) when it imputed income to the appellant, and the judgment entry contains no indication that the trial court considered any of the factors set forth in R.C. 3119.01(C)(11)." *Id.* at ¶ 12. In *Apps,*

"[t]he trial court did not make an explicit finding that appellant was voluntarily unemployed or underemployed prior to imputing potential income to her. Further, the judgment entry contains no indication that the trial court considered any of the factors set forth in R.C. 3119.01(C)(11)." *Id.* at ¶ 49.

{¶ 24} Contrary to *Chapman* and *Apps*, in the present case the trial court noted that it was mandatory that the trial court consider the statutory factors pursuant to R.C. 3119.01(C)(11)(a) in determining its imputation of income to appellant. Specifically, the trial court addressed the factors and found that appellee failed to introduce any testimony or evidence that related to R.C. 3119.01(C)(11)(a)(iv), (v) and (ix). (Divorce Decree at 14-15.) The trial court found R.C. 3119.01(C)(11)(a)(i), (iii), (vii), and (viii), inapplicable and/or irrelevant to the case at bar. (Divorce Decree at 15.) In addition, the trial court found R.C. 3119.01(C)(11)(a)(ii)—level of education, (vi)—special skills and training, and (x)—any other relevant factor, were applicable and/or relevant to this particular case. *Id.* The trial court then proceeded to discuss appellant's education and training and her handling of her separate property assets. (Divorce Decree at 15-16.) In addition, the trial court also noted that it is not the trial court's duty to investigate or develop evidence not presented by the parties. The trial court may presume that any factor not substantiated by evidence is immaterial to its determination of imputed income. *Wilburn v. Wilburn*, 169 Ohio App.3d 415, 2006-Ohio-5820, ¶ 38 (9th Dist.). Our review shows that the trial court did consider the R.C. 3119.01 factors in deciding the imputation of income to appellant.

{¶ 25} The trial court found that appellant was voluntarily underemployed and electing not to work on a full-time basis, although she was entirely capable of doing so. Hence, her income would be imputed at a figure higher than her stipulated current annual earnings. Based on our review of the record, including the trial transcript and the evidence, as well as noting that the trial judge, as trier of fact, was in the best position to determine the credibility of the witnesses, as well as the weight to be afforded to the evidence, we find that the trial court did not abuse its discretion in finding that appellant was voluntarily underemployed. Appellant's first assignment of error is overruled.

### B. ASSIGNMENT OF ERROR TWO—IMPUTED INCOME

{¶ 26} In assignment of error two, appellant argues that the trial court's imputation of employment income to appellant in the amount of $22,880 constitutes an abuse of

discretion, and that the imputation of 9 percent per annum to appellant's separate property assets was unreasonable and unsupported by the facts of this case and relevant statutes.

{¶ 27} In the present case, at the time of the trial, appellant was employed for approximately 30 hours per week as a part-time assistant with two different employers. Appellant testified she would be able to obtain another position, but it would likely be a similar position. (Divorce Decree at 21.) The court then extrapolated her current pay rate in her part-time positions to full-time and found that "Plaintiff's income from the $10 to 12 per hour part-time jobs she typically works annualize to roughly $22,880 per annum." (Divorce Decree at 18.) As such, although the trial court felt that appellant was qualified for higher paying jobs, the trial court imputed income at appellant's current rate of pay from the stipulated income amount of $16,848 to $22,880, i.e., the trial court imputed approximately $6,000 in additional income.

{¶ 28} Appellant argues that Ohio courts have previously held that it is improper to calculate imputed earnings by merely extrapolating an hourly wage over a full-time basis. *See Marek* at ¶ 22, citing *Arnott v. Arnott*, 9th Dist. No. 21291, 2003-Ohio-2152, ¶ 15. A review of these Ninth District Court of Appeals cases shows that they are distinguishable from the present case. In *Marek*, the court stated that "[w]e find such an approach especially troublesome in this case, where the hourly wage is based on the defendant's rough guess, elicited by his own attorney and challenged by the opposing attorney; the same testimony explains that the work season is only seven months; and the defendant expressly testifies that such a wage would not apply to him." *Id.* at ¶ 22. Likewise in *Arnott* at ¶ 15, the court found that:

> The record, however, does not support Wife's assertion that the trial court should have extrapolated Husband's fifty-five dollar hourly rate over a full time basis to calculate his annual income. Husband testified that fifty-five dollars was his hourly rate, but did not testify that he earned this rate on a full-time (i.e., forty hours per week) basis. Rather, Husband testified that the plumbing business was sometimes busy and sometimes slow, and generally was busier during the summer. Husband also testified that some jobs were billed on a flat fee, rather than an hourly, basis. Husband estimated that his net receipts from his plumbing employment in 2000 would be between $ 12,500 and $ 12,700. Husband also testified that his gross receipts from his plumbing business in 1999 were $ 28,466, and he anticipated that his gross receipts in 2000 would be

> approximately twenty-five percent higher. In addition, Husband had back surgery immediately before the trial, which he testified would incapacitate him for eight to ten weeks. In light of all the foregoing, we cannot conclude that the trial court abused its discretion in refusing to impute a full time wage of fifty-five dollars per hour for purposes of calculating Husband's child support obligation.

{¶ 29} Our review of the trial court's imputation of income of approximately $6,000 does not raise the same issues of unreliability that are raised in *Marek* and *Arnott.* We do not find that the trial court abused its discretion in imputing full-time employment at the same pay rate to appellant.

{¶ 30} Appellant argues that her separate property did not qualify as "nonincome-producing assets," and therefore, it was an improper abuse of discretion for the trial court to impute additional interest income to them. Appellant claims that while R.C. 3119.01(C)(11) permits the imputation of employment income to a parent that is not fully employed and/or an imputation of income to nonincome-producing assets, it does not permit the imputation of income to income-producing assets. Appellant cites *Rapp v. Rapp*, 89 Ohio App.3d 85, 89 (12th Dist.1993), for the proposition that "an asset that produces income * * * does not come within the definition of a 'nonincome-producing asset.' "

{¶ 31} However, our review shows that the question before the Twelfth District Court of Appeals was whether a roll-over IRA that was established two years prior to the motion to decrease child support falls under the definition of "income" as set forth in what is now R.C. 3119.01. *Rapp* at 88. Other appellate courts in Ohio have addressed closely analogous questions. In *Albertson v. Ryder*, 85 Ohio App.3d 765 (11th Dist.1992), for example, the court held that annual interest from an obligor's IRA or employee savings plan could be considered as gross income when determining child support. In *Rapp*, the trial court did not predicate its child support order on either the interest income appellant gained from the IRA or on a contribution he made to the IRA. In fact, during the two-year period he has maintained the IRA, appellant did not contribute any additional money to the retirement account. Rather, the court focused exclusively on an IRA that was created two years before the motion to decrease child support was filed. As such, the actual holding

in *Rapp* was that an "IRA is an asset that produces income and thus does not come within the definition of a 'nonincome-producing asset.' " *Id.* at 89.

{¶ 32} In the present case, it is not disputed by the parties that the computation of the child support order is governed by R.C. 3119.01. The definition of "income" as set forth in R.C. 3119.01 is intended to be both broad and flexible. *See, e.g., Williams v. Williams*, 74 Ohio App.3d 838, 843 (4th Dist.1991). Such an expansive definition is necessary to ensure that the best interest of children, the intended beneficiaries of child support awards, are protected.  For the purpose of calculating a child support obligation, "income" is defined by R.C. 3119.01(C)(5) in the following manner:

> "Income" means either of the following:
> (a) For a parent who is employed to full capacity, the gross income of the parent;
>
> (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.
>
> (7) "Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; *interest*; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. "Gross income" includes income of members of any branch of the United States armed services or national guard, including, amounts representing base pay, basic allowance for quarters, basic allowance for subsistence, supplemental subsistence allowance, cost of living adjustment, specialty pay, variable housing allowance, and pay for training or other types of required drills; self-generated income; and *potential cash flow* from any source.

(Emphasis added.)

{¶ 33} The trial court found that appellant was underemployed and imputed potential income from interest associated with her separate property accounts. R.C. 3119.01(17)(b), reads:

> Potential income means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:
>
> * * *
>
> (b) imputed income from any non-income-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant.

{¶ 34} In the present case, the record shows that, in 2016, appellant earned only $675 in interest on accounts with assets of $515,353. As such, we take judicial notice that appellant's rate of return on her separate property interests was only 13/100 of one percent, or stated another way, her interest rate was .0013 percent. In one account with Wells Fargo, appellant only earned $43.46 in interest on a balance of $423,378.79. (Tr. Vol. II at 218.) The trial court commented that "[t]o earn $43 in a year off of $423,000 is ridiculous." (Tr. Vol. II at 222.) Appellant stated that she did not want to transfer the money into higher interest bearing accounts while she was involved in the divorce proceeding. *Id.* Based on the above, we do not find that the trial court abused its discretion in imputing income to appellant under R.C. 3119.01(17)(b).

{¶ 35} Even if it was error to conclude that appellant's separate property accounts were nonincome producing, such error would be harmless. Although the trial court used the word "imputed" when it attributed interest income to appellant's separate property accounts, the record indicates that the trial court was treating the interest income as "potential cash flow" under R.C. 3119.01(C)(7), and not as "potential income" due to voluntary underemployment; thus, it was not necessary to find that appellant was unemployed or underemployed. *See Smart v. Smart,* 3d Dist. No. 17-07-10, 2008-Ohio-

1996, ¶ 19, quoting *Sizemore v. Sizemore*, 2d Dist. No. 13673 (Oct. 14, 1994), "[O]ne of the purposes of the 'potential cash flow' provision in [the statute] * * * [is] to prevent a parent from avoiding child support obligations by shifting present income to a cash flow expected to be enjoyed at some future time, when the children have become emancipated."

{¶ 36} In *Sizemore*, the trial court did not find that the child support obligor was voluntarily unemployed or underemployed, but it did find that it was proper to impute 12 percent interest upon $115,237 that the obligor had loaned to his corporation, even though he was not currently receiving any interest or return on this investment. The court utilized the "potential cash flow" provision in the statute in order to prevent the obligor from avoiding his current child support obligations by shifting potential present income to some future time, after the children were emancipated. *See also Smart* at ¶ 23. Likewise, in the present case, appellant chose not to place her money in higher interest bearing accounts and therefore, did not receive the higher interest payments until after the litigation was concluded.

{¶ 37} Finally, appellant argues that the trial court erred and abused its discretion in imputing income to appellant's accounts in the amount of 9 percent per annum. Appellant claims that pursuant to R.C. 1343.03 and 5703.47, the rounded federal short-term interest rate, as determined by the Tax Commissioner, is 1 percent, plus 3 percent, which yields 4 percent as the applicable per annum interest rate to be used in computing the interest that accrues during the calendar year of 2017. We agree.

{¶ 38} Pursuant to R.C. 1343.03, the appropriate interest rate is determined pursuant to R.C. 5703.47, which provides that the federal short-term interest rate shall be determined on October 15 of each year, and the appropriate interest is the federal short-term interest rate rounded to the nearest whole number plus 3 percent, which shall then be the interest rate per annum used during the following calendar year. *Hasch v. Hasch*, 3d Dist. No. 4-05-15, 2006-Ohio-49, ¶ 8.

{¶ 39} In this case, the pertinent tax rate for 2017 would be set by the federal short-term interest rate as of October 15, 2016, rounded to the nearest whole number plus three percent. In the Divorce Decree, the trial court cites to the applicable web address[2] and states "the annual interest rate for tax year 2017 tax obligations will be 6% annually plus

---

[2] See http://apps.irs.gov/app/picklist/list/federalRates.html

3% = 9%." (Divorce Decree at 18.) The court then applies the 9 percent rate to appellant's separate property assets of $515,353, and imputes interest income in the amount of $46,382. The trial court adds this amount to the annual income of $22,880 and arrives at an income imputation of $69,262. We find the tax rate of 9 percent to be in error.

{¶ 40} Our review shows that the October 2016 federal short-term interest rate was .66 percent, i.e., 0.66 percent. Rev. Rul. 2016-25 Table 1. The nearest whole number to 0.66 percent is 1 percent. Adding 3 percent to 1 percent equals 4 percent. As such, 4 percent is the correct interest rate. The trial court abused its discretion when it applied an erroneous interest rate, i.e., 9 percent, to appellant's separate property assets. Appellant's second assignment of error is sustained.

## C. ASSIGNMENT OF ERROR THREE—CHILD SUPPORT—HEALTH INSURANCE

{¶ 41} In assignment of error three, appellant alleges that the trial court erred and abused its discretion when it erroneously imputed appellant's income to $69,262 per year for purposes of calculating child support and the allocation of health insurance expenses. Appellant further submits that the trial court erred and abused its discretion when it calculated child support based only on appellee's base salary and failed to consider other sources of appellee's income.

{¶ 42} The starting point for determining the proper amount of child support to be paid is parental income, defined as gross income for those employed to full capacity or gross income plus potential income for those not employed to full capacity. *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, ¶ 11; R.C. 3119.01(C)(5). This court has held that a trial court's judgment as to the amount of child support is unreasonable, and an abuse of discretion, when it lacks a rational basis or there is no sound reasoning process to support it. *Poling v. Poling*, 10th Dist. No. 13AP-189, 2013-Ohio-5141, ¶ 22, citing *Vaughn v. Vaughn*, 12th Dist. No. CA2007-02-021, 2007-Ohio-6569, ¶ 12.

{¶ 43} Appellant alleges that the trial court erred and abused its discretion when it incorrectly imputed appellant's income for purposes of child support and the allocation of health insurance expenses. We agree. It is clear that the trial court erroneously imputed 9 percent (instead of 4 percent) of appellant's separate property assets as income. The

calculations regarding child support and health insurance expenses lack a rational basis and are therefore in error.

{¶ 44} Appellant also argues that the trial court erred and abused its discretion when it calculated child support and health insurance expenses based only on appellee's base salary. For purposes of child support, a parent's gross income is defined as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses * * * royalties; tips; rents; dividends; * * * interest; * * * and all other sources of income." R.C. 3119.01(C)(7).

{¶ 45} We note that appellee was earning approximately $96,500 in base salary at the time of trial. (Tr. Vol. I at 34-35.) In the child support computation summary worksheet, the parties' percentage of total income to total income, based solely on appellee's income of $96,500 and appellant's income of $69,262, was appellee at approximately 58 percent and appellant at approximately 42 percent. (Divorce Decree, Attachment B.) These percentages were used in the trial court's allocation of uncovered medical expenses.

{¶ 46} Appellee testified that he could earn bonuses at JP Morgan Chase and previously earned a bonus in the amount of $1,500. (Divorce Decree at 20.) Appellee also testified to receiving extensive benefits from his employer totaling $31,562 in comprehensive benefits, including a 401(k) match, employee sponsored life insurance, contributions to a pension, and stock options. *Id.*

{¶ 47} The trial court indicated that "the values of any such benefits, which have been quantified through testimony and evidence during the trial, are duly captured * * * and included in the Child Support Computation Summary Worksheet included as Attachment B." *Id.* However, our review of the worksheet attached shows that the calculations only reference appellee's base salary of $96,500 and fail to address these benefits. (Divorce Decree, Attachment B.)

{¶ 48} Based on the above, we find that the trial court erred in imputing an erroneous amount of interest to appellant, and in failing to take into account appellee's gross income, including all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and including income from salaries, wages,

overtime pay, bonuses, interest, and all other sources of income pursuant to R.C. 3119.01(C)(7). Therefore, appellant's third assignment of error is sustained.

### D. ASSIGNMENT OF ERROR FOUR—SPOUSAL SUPPORT

{¶ 49} In assignment of error four, appellant argues that the trial court erred and abused its discretion when it determined that spousal support is not warranted or supported by the evidence. The appellant submits that it was error and an abuse of discretion for the trial court to impute income, i.e, the 9 percent interest income. Having found that the application of a 9 percent interest rate to appellant's separate private asset was error, we agree with appellant.

{¶ 50} This court has previously found that the incorrect imputation of income to a party justifies remand on the issue of spousal support. *Chapman* at ¶ 22. In *Meeks* at ¶ 43, the trial court had used the same income figure that it had imputed to the obligor for child support when it calculated his spousal support obligation. This court concluded in *Meeks* that the amount of income imputed to the obligor was an abuse of discretion for purposes of calculating child support, this court also concluded that it was error to use that amount of income in calculating spousal support pursuant to R.C. 3105.18(C)(1)(a). *Id.*

{¶ 51} Appellant also submits that the trial court failed to appropriately consider all of the statutory factors in R.C. 3105.18 when determining that spousal support was not warranted. "In determining whether to award spousal support, a trial court must consider the factors enumerated in R.C. 3105.18(C). As with its property division, a trial court need not itemize and comment upon each factor; however, there must [be] a clear indication in the court's decision that the factors were considered." *Hightower v. Hightower*, 10th Dist. No. 02AP-37, 2002-Ohio-5488, ¶ 24. The record need only show that the trial court considered the factors in making its award. *McClung v. McClung*, 10th Dist. No. 03AP-156, 2004-Ohio-240, ¶ 21.

{¶ 52} In the present case, the trial court addressed each of the R.C. 3105.18(C)(1) factors on which evidence was presented and noted that the additional R.C. 3105.18(C)(1) factors were not specifically addressed by the parties. "When a trial court specifically indicates that it has reviewed the appropriate statutory factors, there is a strong presumption that the factors were indeed considered." *Huffman v. Huffman*, 10th Dist. No.

01AP-726, 2002-Ohio-2565, ¶ 35. Based on our review, we do not find that the trial court failed to appropriately consider the statutory factors of R.C. 3105.18.

{¶ 53} Due to the incorrect amount of income being imputed to appellant, we sustain appellant's fourth assignment of error.

### E. ASSIGNMENT OF ERROR FIVE—NON-MARITAL SEPARATE PROPERTY

{¶ 54} Appellant alleges that the trial court erred and abused its discretion when it disregarded the parties' stipulation that $16,976.34 of funds held in the parties' bank accounts were appellant's non-marital separate property and would be transferred to her, and included the same funds in its division of marital assets. (Stipulated Agreement as to Separate Property at ¶ 8.) The stipulated agreement as to separate property was read into the record and accepted into evidence as joint exhibit 2. This issue is not mentioned in the trial court's Divorce Decree, as such, appellant's fifth assignment of error is sustained.

## V. CONCLUSION

{¶ 55} Having sustained appellant's second, third, fourth and fifth assignments of error, this action is remanded to the trial court with instructions to (1) impute interest income to appellant based on the correct interest rate, i.e., 4 percent, and then recalculate and reconsider the trial court's findings as to (2) child support and healthcare responsibilities pursuant to R.C. 3119.01, (3) spousal support pursuant to R.C. 3105.18, and (4) per assignment of error five, reconsider and implement paragraph 8 of the parties' stipulated agreement as to separate property.

## VI. DISPOSITION

{¶ 56} For the foregoing reasons, appellant's first assignment of error is overruled. Appellant's second, third, fourth, and fifth assignments of error are sustained and this cause is remanded to the Franklin County Court of Common Pleas, Division of Domestic Relations, for further proceedings consistent with this decision.

*Judgment affirmed in part; reversed in part; case remanded with instructions.*

KLATT and DORRIAN, JJ., concur.

_____